IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE

FILED

December 20, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

ALEXANDER C. WELLS,                   )      FOR PUBLICATION
                                      )
        Petitioner/Appellee,          )      Filed: December 20, 1999
                                      )
v.                                    )
                                      )      Davidson Chancery
TENNESSEE BOARD OF REGENTS,           )
TENNESSEE STATE UNIVERSITY,           )      Hon. Ernest Pellegrin,
and DR. JAMES HEFNER,                 )      Special Chancellor
                                      )
        Respondents/Appellants.       )      NO. M1998-00459-SC-R3-CV


For Petitioner/Appellee:              For Respondents-Appellants

Mark C. Scruggs                       Paul G. Summers
Nashville, Tennessee                  Attorney General

                                      Kevin Steiling
                                      Deputy Attorney General
                                      Nashville, Tennessee


**O P I N I O N**


AFFIRMED.                             DROWOTA, J.

In this direct appeal, we must review the Chancery Court's reversal of the Tennessee Board of Regents' decision to terminate a tenured faculty member at Tennessee State University on the statutory ground of "capricious disregard of accepted standards of professional conduct."[1] The Tennessee Board of Regents challenges the decision of the Chancery Court on several grounds, insisting primarily that the Chancellor failed to consider properly admitted evidence which established the charge by clear and convincing evidence. The Board of Regents also takes issue with the Chancellor's finding that the professor was denied due process because he received insufficient notice of the allegations against him. After a thorough review of the record, we agree that the Chancellor committed error by disregarding the testimony of one witness and by finding that the professor received insufficient notice. However, despite these errors, we conclude that the evidence does not preponderate against the Chancellor's findings and therefore affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

The appellee, Dr. Alexander Wells, has been employed at Tennessee State University ("TSU") since 1958, when he was hired as a lab assistant. He later became a professor in the biology department and finally obtained a tenured professorship in that department in 1985. Since becoming a tenured professor, Dr. Wells has conducted research and taught several biology, anatomy and physiology courses each semester.

---

[1] See Tenn. Code Ann. § 49-8-302(5) (1996 Repl.).

2

In the fall of 1990, Trina Hayes Jordan, one of Dr. Wells' former students, filed a complaint with the Affirmative Action Officer at TSU alleging that Dr. Wells had sexually harassed her. Specifically, Ms. Jordan asserted that on October 4, 1990, Dr. Wells engaged in sexual activity with her, against her will. In response to her complaint, and in accordance with the Tennessee Board of Regents' policy, an evidentiary hearing was conducted on September 9, 10 and 11, 1991, before an Administrative Law Judge ("ALJ"). At the conclusion of the hearing the ALJ entered an order finding that Dr. Wells had violated TSU's policy prohibiting sexual harassment. On August 19, 1992, James A. Hefner, president of TSU, entered an order upholding the findings of the ALJ.

Thereafter, the Tennessee Board of Regents ("TBR") initiated charges to terminate Dr. Wells' tenure. A TBR committee issued Dr. Wells a formal tenure termination notice and invited him to meet with the committee in an attempt to reach a mutually acceptable resolution of the case. Despite this invitation, Dr. Wells did not respond to the committee. Pursuant to TSU policy, a hearing was then conducted before a faculty committee on April 5 and 6, 1994, to determine if adequate grounds existed to terminate Dr. Wells' employment at TSU. For reasons not contained in the record, Dr. Wells did not testify at the tenure hearing. At the conclusion of proof the hearing committee found just cause to terminate Dr. Wells' tenure based upon his "capricious disregard of accepted standards of professional conduct" pursuant to Tenn. Code Ann. § 49-8-302(5) (Repl. 1996). On September 1, 1994, Dr. Hefner affirmed the decision of the formal hearing committee. Dr. Wells then appealed the decision to the Chancellor of the TBR, Charles E. Smith, who sustained the findings of the hearing committee on March

3

15, 1995. Dr. Wells also sought permission from the TBR to appeal his termination. The TBR'S Committee on Personnel denied that request, and on June 16, 1995 the full Board affirmed the Committee's denial.

On July 12, 1995, pursuant to Tenn. Code Ann. § 49-8-304 (1996 Repl.), Dr. Wells filed a petition in the Davidson County Chancery Court for judicial review of the termination decision. A trial was conducted on April 8, 1998.[2] During this *de novo* hearing, the Chancellor considered the entire administrative record, as well as additional evidence submitted by Dr. Wells at the hearing, including the live testimony of several witnesses. Dr. Wells was one of the witnesses who testified before the Chancellor. The TBR presented no live testimony, but limited its proof to that contained in the administrative record. On August 17, 1998, the Chancellor entered an order reversing the TBR's decision to terminate Dr. Wells' tenure. The Chancellor concluded that the TBR's finding of "capricious disregard of accepted standards of professional conduct" was not supported by clear and convincing evidence. The Chancellor specifically found Dr. Wells to be a credible witness and observed that his testimony was bolstered by that of other witnesses.

The TBR filed a notice of appeal in this Court on September 10, 1998, pursuant to Tenn. Code Ann. § 49-8-304(d) (1996 Repl.). The TBR challenges the decision of the trial court on several grounds, including insufficient evidence to

_____

[2]The trial was delayed for a variety of reasons, including the retirement of one Chancellor assigned to the case, the recusal of two other Chancellors and the denial of several motions of Dr. Wells, including one seeking an interlocutory appeal in the Court of Appeals for the claims against him to be severed and to receive a jury trial.

4

support the Chancellor's findings and due process deficiencies stemming from lack of notice. Although we have determined that the trial court committed two legal errors, we are constrained to find that the evidence does not preponderate against the Chancellor's findings and therefore affirm the judgment of the trial court.

## REVIEW OF TENURE TERMINATION DECISIONS

The Tennessee Board of Regents' termination of a tenured faculty member for one of the "adequate grounds" set forth at Tenn. Code Ann. § 49-8-302 (1996 Repl.) must be supported by "clear and convincing evidence in the record considered as a whole." See Tenn. Code Ann. § 49-8-303(a)(4) (1996 Repl.). A tenured faculty member may appeal his or her dismissal by obtaining a *de novo* review in Chancery Court. See Tenn. Code Ann. § 49-8-304(a) (1996 Repl.). The scope of the *de novo* review in tenure cases was unclear until clarified by this Court in Frye v. Memphis State Univ., 671 S.W.2d 467, 469 (Tenn. 1984), when we stated that

> '[d]e novo judicial review' in this statute and context means a new hearing in the chancery court based upon the administrative record and any additional or supplemental evidence which either party wishes to adduce relevant to any issue. The Chancellor may, of course, confine new evidence to that which is truly supplemental or additional and is not required to hear all of the evidence anew if he does not find this necessary. Otherwise there would be little need for the administrative transcript. However, he may permit introduction of any and all evidence which he deems necessary to enable him to dispose of the issues presented.

5

Either party may appeal the decision of the Chancellor directly to the Supreme Court. See Tenn. Code Ann. § 49-8-304(d). Because the Chancellor reviews the case without a jury, our scope of review is set forth in Tenn. R. App. P. 13(d), which directs that we make a *de novo* review of the trial court's findings of fact, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. See Walker v. Saturn Corp., 986 S.W.2d 204, 207 (Tenn. 1998); Foster v. Bue, 749 S.W.2d 736, 741 (Tenn. 1988). This case also presents questions of law, of which we make a *de novo* review with no presumption of correctness. See State v. Levandowski, 955 S.W.2d 603, 604 (Tenn.1997); Ridings v. Ralph M. Parsons Co., 914 S.W.2d 79, 80 (Tenn.1996).

## SUFFICIENCY OF THE EVIDENCE

The TBR's first contention is essentially a sufficiency of the evidence argument. It asserts that the Chancellor erred in evaluating the proof and in applying the clear and convincing standard. After reviewing the totality of the evidence, including the administrative record and the live testimony before the Chancellor, we have determined that although there is proof in the record that supports both Dr. Wells' and TBR's positions, the TBR has not demonstrated that the evidence preponderates against the Chancellor's findings.

### A. The Chancellor's Assessments of Live Witness Testimony

The TBR first insists that no deference should be afforded the live

6

testimony presented at the Chancery trial because "many of the recognized reasons for according deference to trial court findings of fact are absent." Specifically, the TBR points out that while the Chancery Court observed several witnesses who testified on Dr. Wells' behalf, including Dr. Wells himself, it never saw nor heard the vast majority of witnesses in this case and that it did not observe any of the witnesses who had testified on behalf of the TBR. Because the Chancellor did not observe the demeanor of all the witnesses, the TBR asserts that the court's credibility findings are not entitled to deference. We find this argument to be contrary to well-settled law.

Unlike appellate courts, trial courts are able to observe witnesses as they testify and to assess their demeanor, which best situates trial judges to evaluate witness credibility. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990); Bowman v. Bowman, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991). Thus, trial courts are in the most favorable position to resolve factual disputes hinging on credibility determinations. See Tenn-Tex Properties v. Brownell-Electro, Inc., 778 S.W.2d 423, 425-26 (Tenn. 1989); Mitchell v. Archibald, 971 S.W.2d 25, 29 (Tenn. Ct. App. 1998). Accordingly, appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary. See Humphrey v. David Witherspoon, Inc., 734 S.W.2d 315, 315-16 (Tenn. 1987); Bingham v. Dyersburg Fabrics. Co., Inc., 567 S.W.2d 169, 170 (Tenn. 1978).

In contrast, appellate review of documentary proof, such as depositions or other forms of testimony presented to the trial court in a "cold" record, differs

7

considerably. When reviewing documentary proof, all impressions of weight and credibility are drawn from the contents of the evidence, and not from the appearance of witnesses and oral testimony at trial. See Orman v. Williams Sonoma, Inc., 803 S.W.2d 672, 676 (Tenn. 1991); Landers v. Fireman's Fund Ins. Co., 775 S.W.2d 355, 356 (Tenn. 1989). As a result, appellate courts may make an independent assessment of the credibility of the documentary proof it reviews, without affording deference to the trial court's findings. See Corcoran v. Foster Auto GMC, Inc., 746 S.W.2d 452, 456 (Tenn. 1988). This rule is premised on the fact that appellate courts are in just as good a position as the trial court to judge the credibility of witnesses who provided the proof. See Elmore v. Travelers Ins. Co., 824 S.W.2d 541, 544 (Tenn. 1992).

The TBR is correct that the Chancellor heard only the testimony of witnesses testifying on Dr. Wells' behalf. Yet the TBR seems to ignore the fact that it was also in a position to ask the Chancellor to put on live witnesses at the Chancery Court trial. Had it chosen to do so, the TBR would have also secured the Chancellor's assessment of the credibility of those witnesses and the considerable deference afforded that assessment on appeal. Because the TBR did not present witnesses at trial, we must now review a record consisting of, on the one hand, live witness testimony submitted by Dr. Wells, and the Chancellor's assessment of that testimony, and, on the other hand, the "cold" testimony contained in the administrative record submitted by the TBR. According to well-settled law, we must afford strict deference only to the trial court's credibility assessments of the witnesses it actually observed, and not to its findings with regard to the administrative record it considered, of which we may make our own

8

independent review.  See Elmore v. Travelers Ins. Co., 824 S.W.2d at 544.

Our review of the transcript of the Chancery proceedings, as well as a reading of applicable case law, indicates that the TBR was not without opportunity to present live witness testimony at the Chancery hearing.  In defining the scope of evidence admissible in a *de novo* review of a tenure termination, we observed in Frye v. Memphis State Univ., 671 S.W.2d at 470, that

> the General Assembly intended that there be a broad review in the chancery court with the right of the parties to offer additional evidence if desired.  We do not believe that the General Assembly intended to confine review to the record made at the administrative level or to limit additional evidence at the chancery level only to alleged procedural irregularities or improprieties in the administrative process.

Although "[t]he Chancellor may, of course, confine new evidence to that which is truly supplemental or additional and is not required to hear all of the evidence anew if he does not find it necessary . . . . ," id. at 469, we made it clear that the Chancellor has broad discretion in allowing additional evidence at the *de novo* review, even if the evidence had already been included in the record at a prior administrative hearing. See id. at 469.

In this case the Chancellor did not preclude the TBR from presenting live witnesses.   The Chancellor began the hearing by asking each party whether it had additional proof to offer.  Dr. Wells' counsel alone indicated his intent to put on witnesses.  Counsel for the TBR then objected to the witnesses on the ground that their testimony would be redundant and cumulative of testimony that had

9

been submitted at the prior administrative hearings.  Even though the Chancellor overruled the objections and allowed Dr. Wells' witnesses to testify, the TBR made the decision to confine its own proof to the administrative record.

We acknowledge that counsel for the TBR may have interpreted Frye v. Memphis State Univ., 671 S.W.2d 467, as restricting Dr. Wells from presenting witnesses at the Chancery hearing whose testimony would be redundant of that presented at prior administrative hearings.  However counsel was aware that Dr. Wells did not testify at the prior hearing before the faculty committee, and that his testimony may therefore have been considered "additional" by the Chancellor and permissible under the Frye decision.  Furthermore, the record indicates that counsel for the TBR was made aware that Dr. Wells planned to put on as many as eighty-one witnesses at the Chancery hearing.  In sum, by confining its proof at trial to the administrative record, despite Dr. Wells' presentation of additional witnesses, the TBR knew or should have known that on appeal, this Court would strictly defer to the Chancellor's credibility determinations with regard only to the witnesses it actually heard, and not to the testimony contained in the administrative record, of which we may make an independent credibility assessment.   In reversing the decision of the TBR, the Chancellor specifically found Dr. Wells' testimony to be credible, and we adhere to that assessment due to the absence of clear and convincing proof to the contrary.  See Bingham v. Dyersburg Fabrics. Co., Inc., 567 S.W.2d 169, 170 (Tenn. 1978); Thompson v. Creswell Indus. Supply, Inc., 936 S.W.2d 955, 957 (Tenn. Ct. App. 1996).

### B.  The Chancellor's Review of the Administrative Record

10

The TBR also argues that the Chancellor did not review or consider the record of the hearing before the ALJ in making its factual determinations. As evidence of this assertion, the TBR points out that in his Memorandum and Final Order, the Chancellor made no reference to the ALJ hearing or to a few witnesses who testified only at that hearing and whose testimony would significantly affect the Chancellor's findings. These omissions include the testimony of Dr. Mallette, whose testimony at the ALJ hearing, according to the TBR, directly undermines the credibility of Tok Sun Choe, a witness that the Chancellor found bolstered Dr. Wells' testimony. Also overlooked by the Chancellor, according to the TBR, is the testimony of Vanessa Smith, who testified before the ALJ that Dr. Wells had sexually harassed her both physically and verbally on three occasions in 1985.

The record of the hearing before the ALJ was clearly admitted into evidence at the Chancery trial. In his Memorandum and Final Order, the Chancellor refers to all of the evidence, stating that his decision was "[b]ased upon review of the entire record, the additional evidence introduced at trial and consideration of the argument of counsel for both parties . . ." While the Final Order makes no reference to the testimony of specific witnesses who testified before the ALJ, we have no reason to believe that the Chancellor ignored or otherwise overlooked the transcript of that hearing in weighing the evidence. Furthermore, the TBR could have filed a motion pursuant to Tenn. R. Civ. P. 59 in order to call the Chancellor's attention to the matters it felt he had disregarded in reviewing the evidence. However the TBR failed to do so.

11

The TBR also challenges the Chancellor's determinations of the credibility of some of its key witnesses, insisting that the court "minimizes and dismisses" testimony from the faculty committee tenure hearing.    Although the TBR did submit compelling proof at that hearing, the record also contains reliable evidence that controverts that proof and substantiates Dr. Wells' position.   We recognize that we are not required to give strict deference to the Chancellor's assessment of the testimony contained in a "cold" record.  See Orman v. Williams Sonoma, Inc., 803 S.W.2d at 676.   Yet our own evaluation of the faculty committee tenure hearing testimony, coupled with the deference we must afford the Chancellor's finding that Dr. Wells was a credible witness,  leads us to agree with the Chancellor that the charges against Dr. Wells were not proven by clear and convincing evidence.

**THE TESTIMONY OF JACKIE JONES**

The TBR next contends that the Chancellor erred by declining to consider the testimony of Jackie Jones, who worked as a secretary in the biology department at TSU from 1977 to 1983.   Ms. Jones testified that Dr. Wells sexually harassed her during her tenure at TSU and that she filed charges against him with the University.   Ms. Jones further testified that after learning that the University's only disciplinary action against Dr. Wells was a six-month probation, she left her job because she did not feel safe working in the same building as Dr. Wells.

Although Ms. Jones had testified at the faculty committee tenure hearing,

12

the Chancellor did not consider her testimony when evaluating the case, on the ground that "her claims were very specifically employer-employee sexual harassment and were fully and finally resolved through a formal administrative process. Disciplinary action was taken against Dr. Wells as a result. Thus, the claims of Ms. Jones have no bearing on the present case." The TBR points out that the Chancellor cites no authority indicating that the "capricious disregard of accepted standards of professional conduct" applies only to conduct of faculty members toward students. Furthermore, the TBR insists that we have held that the "capricious disregard" grounds for termination does in fact apply to conduct between faculty and staff. We agree.

In Phillips v. State Bd. of Regents, 863 S.W.2d 45 (Tenn. 1993), we addressed the situation where a tenured faculty member at Shelby State Community College was terminated for "capricious disregard of accepted standards of professional conduct" based upon her "lack of professional behavior toward students, staff and colleagues," "insubordination to supervisors," and "continuous increasing patterns of controversy with other professional areas at the college." See id. at 48. This Court affirmed the tenure termination, finding that there was "overwhelming proof from students, staff, colleagues, and superiors about Phillips' inappropriate behavior." See id. at 48. The Phillips case clearly illustrates that the behavior of tenured faculty toward staff, colleagues and superiors, as well as toward students, can constitute "capricious disregard" within the meaning of Tenn. Code Ann. § 49-8-302(5) (1996 Repl.). Accordingly, we conclude that the Chancellor erred by disregarding the testimony of Ms. Jones, a staff member who complained of harassment by Dr. Wells. This error, however,

13

does not alter our conclusion that the Chancellor's findings are supported by a preponderance of the evidence.

## EVIDENCE OF OTHER VICTIMS

We next address the TBR's assertion that the Chancellor committed error by failing to consider the claims of a number of women who also allege they were sexually harassed by Dr. Wells. In his Memorandum and Final Order, the Chancellor recognized that "[i]n addition to Ms. Hayes [Jordan], the Respondents [TBR] presented evidence at the administrative hearing from four other women regarding incidents of alleged misconduct by Dr. Wells." The Chancellor then discussed the allegations and credibility of the testimony of these four women. The TBR points out that the record contained allegations of eight alleged victims, and that the Chancellor's failure to discuss some of these allegations in the final order indicates a blatant disregard for their claims. Accordingly, the TBR insists that the Chancellor's findings are not supported by a preponderance of the evidence.

We acknowledge that in his final order the Chancellor discussed only the testimony of the alleged victims who testified at the faculty committee tenure hearing, and not at the ALJ hearing.[3] However the claims of the other alleged victims, who testified only at the ALJ hearing, were also contained in the record, and nothing indicates that the Chancellor refused to consider their testimony. We

---

[3]An exception exists with regard to the testimony of Bettye Williams, who testified at both the faculty committee tenure hearing and at the ALJ hearing, and whose testimony was discussed by the Chancellor in his final order.

therefore reject the TBR's assertion that the Chancellor failed to consider these allegations in making his factual determinations. Moreover, as we have pointed out, the TBR could have filed a motion to alter or amend the judgment pursuant to Tenn. R. Civ. P. 59 if it believed the Chancellor disregarded pertinent testimony. The TBR did not do so.

## PRIOR NOTICE OF INAPPROPRIATE BEHAVIOR

Finally, the TBR argues that the trial court erred in determining that the charges against Dr. Wells cannot stand because TSU did not give him prior notice that his behavior was inappropriate. Relying on Phillips v. State Bd. of Regents, 863 S.W.2d 45, the Chancery Court concluded that "[i]n order for one to evince the requisite capricious disregard for the applicable standard of professional conduct, it is necessary to first have notice that one's behavior does not conform to the standard." In the Phillips case a tenured professor, prior to her dismissal for cause, received notice from the university on several occasions that her behavior was inappropriate and that her failure to correct it could result in her termination. Applying that logic to these facts, the Chancellor determined that "[i]n the instant case, there was no evidence that the University ever told Dr. Wells of any problems or complaints regarding his behavior toward students. . . . Because Dr. Wells was not put on notice that he had acted inappropriately, his actions could not evince a 'capricious disregard for accepted standards of professional conduct.'" We have concluded that the Chancellor misinterpreted our holding in Phillips v. State Bd. of Regents, 863 S.W.2d at 50-51, and erred by finding that Dr. Wells did not receive adequate notice of the charges against him.

15

Although this error does not alter our conclusion that the Chancery Court's findings are otherwise supported by a preponderance of the evidence, we take this opportunity to clarify our holding in Phillips v. State Bd. of Regents, 863 S.W.2d 50-51, and to discuss the degree of notice necessary to satisfy due process in tenure termination proceedings.

Our decision in Phillips v. State Bd. of Regents, 863 S.W.2d 45, does not hold that formal notice of each allegation of deficient conduct is required before termination proceedings can be initiated against a tenured employee. Rather, in that case we observed that while the fundamental requirements of due process must be satisfied (notice and an opportunity to be heard) in tenure termination proceedings, see Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657 (1950), due process is flexible and "[e]laborate procedures at one stage may compensate for deficiencies at other stages," see Phillips v. State Bd. of Regents, 863 S.W.2d at 50 quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191 (1965). The primary purpose of the notice requirement is "to allow the affected party to marshal a case against the firing body." See Phillips v. State Bd. of Regents, 863 S.W.2d at 50. Applying these guidelines, we determined that although Phillips claimed she was not given sufficiently detailed notice of the charges against her, by the time she received a *de novo* review in Chancery Court she had received detailed notice and was capable of presenting additional evidence to refute the allegations against her. See id. at 50.

Like in Phillips v. State Bd. of Regents, 863 S.W.2d at 50-51, we conclude

16

that in this case "the component parts of the process afforded a substantively correct result." Dr. Wells initially received notice of the charges against him in the form of a letter, issued by TSU, alerting him to the allegations of sexual harassment. He was then afforded two full administrative hearings at which he was permitted to testify and present witnesses. Finally, Dr. Wells received a *de novo* review of his case in Chancery Court, where he again testified and presented witnesses. Any alleged due process deficiency was certainly cured at the time of the Chancery Court hearing, which occurred eight years after charges were initiated against him.

The TBR also takes issue with the Chancery Court's conclusion that because he had not been informed by the University that there was a problem with his behavior toward students, Dr. Wells could not have known that his conduct evinced a <u>capricious</u> disregard for accepted standards of conduct within the meaning of Tenn. Code Ann. § 49-8-302(5) (1996 Repl.). In essence, Dr. Wells contends that the statute does not sufficiently define what conduct it encompasses.

In <u>Phillips v. State Bd. of Regents</u>, 863 S.W.2d at 50, this Court addressed Phillips' contention that the "capricious disregard" statute was void for vagueness by stating:

> We agree with the Third Circuit that it is not unfair or unforeseeable for a tenured professor to be expected to behave professionally towards students and co-workers and to comply with the directives of a superior . . . . Clearly, Phillips, using her common sense and general knowledge of employer-employee relationships, had fair

17

> notice that the conduct charged put her at risk of dismissal under the standard of 'capricious disregard of accepted standards of professional conduct.'

Id. quoting San Filippo v. Bongiovanni, 961 F.2d 1125, 1137 (3rd Cir. 1992).

Applying the rule in Phillips v. State Bd. of Regents, 863 S.W.2d at 50, that a tenured employee must use common sense in discerning what is appropriate behavior, it is clear that Dr. Wells had ample notice that his alleged conduct was not appropriate within the meaning of Tenn. Code Ann. § 49-8-302(5) (1996 Repl.). The allegations in this case, including asking female students to go to happy hour, grabbing a female student's breast, and commenting on female students' clothing in a suggestive and sexual manner, establish a pattern of behavior that common sense dictates deviates from accepted standards.

Moreover, Dr. Wells had been disciplined by TSU on a prior occasion, when Ms. Jones had filed charges against him for sexual harassment. Contrary to Dr. Wells' contention that he was unaware of TSU's standards with regard to sexual harassment, the probation he received in connection with Ms. Jones' complaint should have alerted him that his behavior, in some fashion, did not comport with university standards. We find no merit to the Chancery Court's conclusion that Dr. Wells did not have notice that his conduct, while perhaps constituting a "disregard" for accepted standards of professional conduct, could have also amounted to a "capricious" disregard for those standards.

18

## CONCLUSION

We conclude that the evidence does not preponderate against the Chancellor's finding that the record in this case fails to clearly and convincingly establish the charge of "capricious disregard of accepted standards of professional conduct." Accordingly, the judgment of the Chancery Court reversing the Tennessee Board of Regent's dismissal of Dr. Wells is affirmed. Costs of this appeal are taxed against the Tennessee Board of Regents.

_____
Frank F. Drowota, III, Justice

**CONCUR:**

Anderson, C.J.
Barker, Holder, JJ
Birch, J. Not - Participating

19