IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 29, 2001 Session

## BLANCHE BUNCH v. ROBERT SHARP

**Direct Appeal from the Circuit Court for Claiborne County**
**No. 7791    Hon. Conrad Troutman, Circuit Judge**

**FILED MAY 30, 2001**

**No. E1999-02524-COA-R3-CV**

In this boundary line dispute, the Trial Judge established the boundary between the parties' lands and Plaintiff has appealed. We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

W. Andrew Fox, Knoxville, Tennessee, for Appellant, Blanche Bunch.

Johnny V. Dunaway, LaFollette, Tennessee, for Appellee, Robert Sharp.

### OPINION

In this boundary dispute, the Trial Judge established the boundary between the parties' properties, and plaintiff has appealed.

After hearing evidence, the Trial Judge in his Opinion said:

The plaintiff and her deceased husband purchased their 210 acre tract of land in 1941, and the defendant's father and mother purchased their tract of land in 1970. Each side has presented an engineer who surveyed the property and filed a map.

The plaintiff contends that she owns an area that overlaps an area which the defendant contends he owns. The defendant in 1972 constructed a two-storey house and in 1992 constructed a 200 foot long and 46 foot wide metal building, through which the plaintiff contends her property line passes.

Both parties' deeds use the calls that were used in their previous deeds, and both surveyors acknowledge that the descriptions of both parcels were not closed in a survey, and that this type of problem often causes overlaps of adjoining properties.

On appeal, plaintiff raises several issues, the dispositive issue being, however, the location of the boundary line.

Our standard of review is *de novo* with a presumption of correctness of the trial court's findings of fact, unless the preponderance of evidence is otherwise. Tenn. R. App. P. 13(d); *McCarty v. McCarty*, 863 S.W.2d 716, 719 (Tenn. Ct. App. 1992). No presumption of correctness attaches to the trial court's legal conclusions. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87 (Tenn. 1993).

Each party presented witnesses, and the testimony as to the location of the boundary line is sharply conflicting. Each party offered the expert testimony of a surveyor. Fultz, plaintiff's surveyor, testified that the boundary line between Bunch and Sharp ran through Sharp's water bottling plant, up to the current Murphy Mill Road, and encompassed his brick residence and trout ponds. Crutchfield, defendant's surveyor, did not plat the boundary line any differently than Fultz, but rather used Fultz's line and then pointed out the problems he saw with it, and came to the conclusion that the line should be moved south because he believed Murphy Mill Road had been moved north. Fultz agreed that Murphy Mill Road was an important monument, and that if its location had changed then it would change the line that he established, but he thought the calls in the Bunch deed seemed to indicate that Murphy Mill Road had not moved. Accordingly, whether the location of Murphy Mill Road has changed is the linchpin in this boundary dispute.

The Trial Judge expressly found as a fact that Murphy Mill Road had been changed to a new location in 1970. Lawrence Bunch and two other witnesses for the plaintiff testified that the road had only changed location after passing the brick residence, where it used to turn south to go to the old bridge. These witnesses testified that the road had not changed in regard to the plant and trout ponds. Robert Sharp and his father-in-law testified that the road had completely shifted to the north, and that the old road ran parallel to the existing road and had been located in the area where the trout ponds are now located.

Crutchfield testified that he had relied upon information supplied by other people in determining that the old road used to run behind where the bottling plant is, but he also testified that he found evidence of the old road in the location shown on his survey at both ends of the trout ponds. Fultz testified that he did not find evidence of the old roadbed at the west end of the trout ponds, but believed that the old road had run south to the bridge past the brick residence. He also testified that

he really did not know exactly how the old road had run.

Faced with this conflicting testimony, the Trial Judge based his finding upon the credibility of the witnesses. In reviewing the trial judge's judgment of witness credibility, the Supreme Court has said:

> Unlike appellate courts, trial courts are able to observe witnesses as they testify and to assess their demeanor, which best situates trial judges to evaluate witness credibility. Thus, trial courts are in the most favorable position to resolve factual disputes hinging on credibility determinations. Accordingly, appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary.

*Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

The evidence does not preponderate against the Trial Judge's finding of fact regarding the relocation of the road. Since both surveyors agreed that if the road referenced in the 1941 deed was actually located to the south of where the existing road is, then the boundary line would also have to be moved to the south of where Fultz placed it. Also the lease agreement in the record indicates that the parties understood that the water of the stream "flow[ed] across" a corner of Bunch property, not that the spring and most of the body of water were located on the Bunch property, as would be true if the plaintiff's line was correct. We affirm the Trial Judge on the issue of the proper location of the boundary between the parties.

Plaintiff argues that the leased area found by the Court was also in error, and this assertion forms the basis of plaintiff's next argument regarding adverse possession. As hereinafter discussed, the Trial Court found the leased area was unable to be specifically located by the surveyors based upon its description, but found that it most likely was in the area south of the creek and the lease was probably intended to keep Bunch's cattle from getting into the creek. The evidence does not preponderate against these findings.

The Lease Agreement states that the waters of the spring and streams flow across the corner of Bunch land, and describes the corner as "near the old Murphy Mill Spring, and bounded by the lands of Rufus Giles and Sharp. The Lease Agreement further states that Sharp has "certain rights in and to the waters of Murphy Spring and the old mill race" and that he would like to develop his property and the mill race and Murphy Mill Spring. The Lease Agreement also states that Sharp can make any improvements necessary "for the use, enjoyment and development of his existing rights in said spring and mill race" and that he will provide access to water for Bunch's livestock. The parties' rights under the Lease are clear, but the leased area is not identified as to location.

The Lease Agreement provides a description of the leased area, but neither surveyor, however, could locate the leased area with any certainty, based upon the description. Since the provision is ambiguous, the Court properly considered parol evidence to explain. *See McMillin v.*

*Great Southern Corp.*, 480 S.W.2d 152 (Tenn. Ct. App. 1972). The evidence does not preponderate against the Trial Judge's ruling on this issue, and the Court's decision supports the expressed intent of the Lease, which was to allow Sharp to develop the spring, stream and old mill race, and to provide a way for Bunch's livestock to have water.

Plaintiff also argues that Sharp could not have adversely possessed the land in question as the Trial Court found, because it was actually leased by plaintiff to Sharp. This argument, however, based upon plaintiff's contention that the Trial Court's determination of the lease area was in error, is without merit.

Finally, plaintiff asserts that she is entitled to a new trial based upon newly discovered evidence of another survey. Plaintiff's Motion for a New Trial stated that Sharp testified in his deposition and at trial that he had a survey done around 1970 by a Mr. Reece, but that he was unable to locate the survey. The Motion further states that plaintiff's son contacted Reece's son after trial and obtained a copy of that survey, and that a new trial should be had in order for the Court to consider the Reece survey. It is discretionary with a Trial Court whether to grant a Rule 59 motion based upon newly discovered evidence. *Collins v. Greene County Bank*, 916 S.W.2d 941 (Tenn. Ct. App. 1995). The moving party must demonstrate that the new evidence was not known prior to or during trial, and that it could not have been ascertained by the exercise of reasonable diligence. *Leeper v. Cook*, 688 S.W.2d 94 (Tenn. Ct. App. 1985). A further consideration is whether a new trial based upon such evidence would change the result. *Id.*

In this case plaintiff did not establish that the existence of the Reece survey was not known prior to or during the trial, or whether it could have been obtained through exercise of reasonable diligence. Moreover, plaintiff cannot show that a new trial based upon the Reece survey would have changed the result. The survey shows that it was performed in August, 1972, and that this was after the road was moved, according to the testimony the Trial Judge found to be credible. Moreover, the record shows the Trial Judge did examine the survey and concluded it would not change the judgment of the Trial Court.

We affirm the judgment of the Trial Court and remand, with the cost of the appeal assessed to Blanche Bunch.

_____
HERSCHEL PICKENS FRANKS, J.