IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 19, 2003 Session

## GERALDINE MILES, ET AL. v. JOHN T. WALSH, M.D., ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No. 98213 T.D.    Robert L. Childers, Judge**

---

**No. W2002-00234-COA-R3-CV - Filed April 11, 2003**

---

This appeal arises from a medical malpractice action. Sitting without a jury, the trial court found plaintiffs had failed to prove defendants' conduct fell below the standard of care. The trial court accordingly entered judgment for defendants. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS and HOLLY K. LILLARD, J.J., joined.

Al H. Thomas and Regina Guy, Memphis, Tennessee, for the appellants, Geraldine Miles and Robert Miles.

John H. Dotson and Joseph M. Clark, Memphis, Tennessee, for the appellees, John T. Walsh, M.D., and Affiliated Anesthesiologists.

### OPINION

In November 1998, Geraldine Miles (Ms. Miles) and Robert Miles (hereinafter, collectively, " the Miles") commenced this action against John Walsh, M.D., and Affiliated Anesthesiologists, P.C. (hereinafter, collectively, "Dr. Walsh"), in the Circuit Court for Shelby County.[1] In their complaint, the Miles allege Dr. Walsh, a member of Affiliated Anesthesiologists, was negligent in his care of Ms. Miles during and immediately following surgery. They allege Dr. Walsh deviated from the acceptable standard of professional care, causing permanent injury to Ms. Miles. Ms. Miles sought a judgment for compensatory damages for physical and mental pain and suffering of

---

[1]The Miles' original complaint also named William Bourland, M.D. (Ms. Miles' surgeon), and Mid-South Surgical Investment, Inc. (formerly Germantown Ambulatory Surgical Center, Inc.) as defendants. The claims against Dr. Bourland and Surgical Investment were dismissed with prejudice by consent orders on March 6, 2001.

three million dollars. Robert Miles, sought damages of one million dollars for mental pain and suffering and loss of consortium. Following a seven-day, nonjury trial, the trial court found the Miles had failed to carry their burden of proving Dr. Walsh's treatment of Ms. Miles fell below the standard of care. On January 24, 2002, the trial court entered judgment for Dr. Walsh, and the Miles filed a timely notice of appeal to this Court.

## *Issues for Review*

The only issue for review by this Court, as we restate it, is whether the trial court erred in determining that the Miles had failed to carry their burden of proving Dr. Walsh's conduct fell below the standard of care.

## *Standard of Review*

Our standard of review of a trial court sitting without a jury is *de novo*. *See Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn.1995). There is a presumption of correctness as to the trial court's findings of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d).

The Miles assert that the trial court in this case made no findings of fact. They submit that our review accordingly should not include a presumption of correctness for the trial court's determination. The plaintiff in an action for negligence must prove: (1) a duty of care owed by the defendant to the plaintiff; (2) breach of that duty by conduct falling below the standard of care; (3) injury; (4) causation in fact; (5) proximate or legal cause. *Turner v. Jordan*, 957 S.W.2d 815, 818 (Tenn.1997). The existence of a legal duty is a question of law to be determined by the court. *Id.* Whether the defendant breached a duty by conduct falling below the standard of care is a question of fact. *Lindsey v. Miami Dev. Corp.*, 689 S.W.2d 856, 861 (Tenn.1985). Thus the trial court's determination that the Miles failed to establish conduct falling below the standard of care is a question of fact which we review with a presumption of correctness.

## *Discussion*

Dr. Walsh was the anesthesiologist for surgery undergone by Ms. Miles for carpal tunnel syndrome at 10:30 a.m. on November 1, 1996. The anesthetic procedure used was a Bier Block, a form of regional anesthesia. This procedure includes placing a tourniquet above the patient's elbow to keep the anesthesia (in this case Xylocaine) from flowing out of the arm during the surgery. After surgery, the tourniquet must be released in increments so that the anesthesia cannot rush into the venous system. In their complaint, the Miles assert that after surgery the tourniquet was released and Ms. Miles was in the recovery room at or about 11:00 a.m.

Hospital records indicate that at 11:10 a.m., Ms. Miles' blood pressure dropped to 80/48. The recovery room nurse reported this to Dr. Walsh, who ordered bolus fluid to be administered through the IV. According to the Miles' complaint, the recovery room nurse also noted that Ms.

Miles was experiencing drowsiness, and that she remained drowsy at the time of discharge. In his affidavit, Dr. Walsh stated that at the time of discharge, Ms. Miles was alert "and in the same condition as when she presented for the surgery." Catherine Brannon, the recovery room nurse on duty during Ms. Miles' procedure, testified by deposition that although Ms. Miles was drowsy, she "respond[ed] appropriately to all verbal stimuli, and her circulation checks remained stable throughout the whole procedure." Although the Miles assert that Dr. Walsh was occupied with another surgery and therefore did not personally evaluate Ms. Miles,[2] Dr. Walsh testified that he evaluated Ms. Miles at 11:15 a.m., and that his notes indicate she had no anesthetic complications at that time.[3]

In their complaint, the Miles allege that over the course of several days following the surgery, Ms. Miles became increasingly disoriented, suffering memory loss and slurred speech and exhibiting "bizarre" behavior. She became forgetful, loud and "hyper," and family members described her as having eyes that "bugged out" and as letting her tongue hang out. She became unable to function normally and requires constant supervision. From November 1996 through May 1997, Ms. Miles consulted several physicians, including neurologists and psychiatrists. Expert diagnoses of Ms. Miles' condition conflict.

The Miles allege that Ms. Miles' has sustained a neurological injury that was caused by the negligence of Dr. Walsh during and immediately following the November 1996 surgery. They contend Dr. Walsh breached the standard of care by: 1) letting down the tourniquet improperly, thereby allowing the anesthesia to cause the hypotension; 2) failing to treat the decreased blood pressure in a timely fashion; 3) not adequately evaluating her change in level of consciousness or blood pressure at the time she was released from surgery.

The trial court considered a substantial amount of expert testimony regarding the possible causes of Ms. Miles' injuries and the standard of care applicable to Dr. Walsh. Testimony for both parties was rendered live, by deposition, and by video tape. Upon review of the record, we cannot say that the preponderance of evidence is contrary to the determination of the trial court. Moreover, implicit in the court's judgment are determinations of witness credibility. Since the trial court is in the best position to observe the witnesses and to assess their demeanor, this Court will not reevaluate the trial court's assessment of witnesses' credibility in the absence of clear and convincing evidence to the contrary. *See Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn.1999).

Conflicting testimony concerning the nature and cause of Ms. Miles' injury notwithstanding, the testimony of witnesses with respect to whether Dr. Walsh breached the standard of care does not

---

[2]According to Dr. Walsh's testimony, Ms. Miles 10:30 a.m. surgery was the fourth surgery of five for which he was the anesthesiologist the morning of November 1, 1996. All five surgeries utilized the Bier Block I.V. sedation.

[3]Dr. Walsh further testified to time discrepancies between his records and hospital records, stating that the times displayed on clocks throughout the hospital vary, and that he accordingly uses his watch for consistency in time notations on his records.

preponderate against the judgment of the trial court.  Dr. William Bourland, who performed the surgery and observed Dr. Walsh's treatment of Ms. Miles, testified that Dr. Walsh followed the applicable standard of care in his treatment of Ms. Miles on November 1, 1996.  Dr. Bourland's testimony was supported by that of Dr. Greg Thompson, an anesthesiologist not previously acquainted with Dr. Walsh, who reviewed the records and testified that Dr. Walsh did not deviate from the standard of care.  The preponderance of evidence in this record does not establish that Dr. Walsh failed to follow the standard of care applicable to a medical professional in these circumstances.  The Miles have failed to carry their burden of proof on this issue.  We accordingly affirm the judgment of the trial court.

### *Conclusion*

In light of the foregoing, we affirm the judgment of the trial court.  Costs of this appeal are taxed to Geraldine Miles and Robert Miles, Jr., and their surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE