IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 7, 2003 Session

## IN THE MATTER OF: H.E.J. AND H.E.J.

### Appeal from the Juvenile Court for Williamson County
No. 24804     Alfred L. Nations, Judge

---

### No. M2002-00539-COA-R3-JV - Filed June 19, 2003

---

The trial court terminated the parental rights of a father of twins on multiple grounds, including abandonment and the commission of severe child abuse against the twin's mother while she was a minor child residing in his home. The court also ordered him to pay $14,400 in child support arrearages. We affirm the termination, but we reverse the child support award.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
### Affirmed in Part; Reversed in Part; and Remanded

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and PATRICIA J. COTTRELL, joined.

Rebecca E. Byrd, Franklin, Tennessee, for the appellant, J.L.B.

Jade A. Rogers, Gallatin, Tennessee, for the appellee, The Association for Guidance, Aid, Placement and Empathy, Inc.

### OPINION

### I.

This case involves twin girls born in late 1996 to twenty-one-year-old M.J., an unmarried woman who was living with her mother, D.B., and her stepfather, J.B. M.J. and the twins remained with M.J.'s mother and stepfather until October 31, 1999, when an incident of alcohol and drug-related abuse by the stepfather led M.J. to leave their home. Although J.B. attempted to prevent M.J. from taking the children with her, M.J. was ultimately able to obtain physical custody of them.[1]

---

[1] The record indicates that to keep M.J. from taking the children, J.B. drove them away in his truck, which did not have any child restraint devices. J.B. had been drinking and taking drugs on the day of this incident. M.J. brought charges against him, and J.B. ultimately served 45 days in jail for child endangerment.

Shortly after this incident, M.J. contacted AGAPE, a private non-profit adoption agency. AGAPE obtained legal custody of the children from M.J. by agreed order on January 5, 2000. The order recited that M.J. would retain visitation rights, and that the father of the children was unknown. The twins were then placed in foster care. M.J. revealed to AGAPE's caseworker that although she wasn't certain, she thought J.B. might be the father of the twins.

On March 30, 2000, AGAPE sent a certified letter to J.B., informing him that M.J. had decided to place the twins for adoption, and that she had named J.B. and one other man as possible fathers of the girls. The letter further informed J.B. as to the judicial procedures for establishing paternity, and the steps he would have to take before being granted custody. It further informed him that another option would be to sign a Waiver of Interest, a document by which he could consent to adoptive placement without admitting paternity. J.B. did not respond in any way to the letter.

On May 15, 2000, AGAPE filed a petition in the Juvenile Court of Davidson County to terminate the parental rights of J.B. "and/or unknown father of the children." M.J. subsequently surrendered her parental rights to AGAPE. She testified that she did not want her girls growing up in a home environment anything like the one she had experienced. The first hearing on AGAPE's petition was conducted on September 15, 2000. J.B appeared, and adamantly denied that he was the father of the twins. He was ordered to take a DNA test, which conclusively proved him to be the father.

J.B. finally acted on December 6, 2000 by filing a petition to establish paternity, followed by a Motion for Visitation. The motion was denied. On the advice of his attorney, J.B. made two payments of child support of $500 each in May and June of 2001. Another side of the legal system came into play on September 10, 2001, when J.B. pled guilty to incest, and was sentenced to five years imprisonment as a standard offender.

On February 6, 2002, after several false starts and the filing of an Amended Petition for Termination in the Juvenile Court of Williamson County, that court began its final hearing on the termination of J.B.'s rights. J.B. was transported from prison in order to attend. The interests of the children were represented by the Guardian Ad Litem. The hearing was conducted over a period of two days. Eleven witnesses testified, including M.J. and J.B.

At the conclusion of the proof, the trial court ruled from the bench that the petitioner had proven three different grounds for termination by clear and convincing evidence: failure to petition the court to establish paternity within thirty days of being notified of the alleged paternity pursuant to Tenn. Code Ann. § 36-1-113(g)(9)(vi), abandonment by reason of willfully failing to support the children, and the commission of severe child abuse against a child residing in the defendant's home. The court also found it to be in the best interest of the twins that J.B.'s parental rights be terminated.

Additionally, the court declared that while a termination of parental rights severed the relationship between parent and child, thereby relieving the parent of any obligation of future support, the parent could still be held liable for child support arrearages or other financial obligations

incurred for the care of the child prior to the entry of the order terminating parental rights. The court's Final Order was filed on March 7, 2002. It included a ruling that J.B. was responsible for child support arrearages in the amount of $14,404. J.B. filed a Motion to Alter or Amend the judgment, which was denied. This appeal followed.

## II. GROUNDS FOR TERMINATION
### A. THE STANDARD OF PROOF

It is a well-established constitutional principle that "[a] parent has a fundamental right to the care, custody and control of his or her child." *Stanley v. Illinois*, 405 U.S. 645 (1972). However, that right is not absolute. Parental rights can be terminated upon appropriate statutory grounds if those grounds are proven by clear and convincing evidence. *See In re Drinnon,* 776 S.W.2d 96 (Tenn. Ct. App. 1988); *Santosky v. Kramer*, 455 U.S. 745 (1982).

Tenn. Code Ann. § 36-1-113 sets out a comprehensive scheme for termination of parental rights in appropriate cases. The constitutionally-required burden of proof is expressed in section (c) of the statute, which states:

Termination of parental or guardianship rights must be based upon:

(1) A finding by the court by clear and convincing evidence that the grounds for termination or parental or guardianship rights have been established; and
(2) That termination of the parent's or guardian's rights is in the best interests of the child.

Although the statute sets out multiple possible grounds for termination of parental rights, only one of those grounds need be proven for a valid termination to be ordered, so long as that ground is proven by clear and convincing evidence, and it is also proven that termination is in the best interest of the child or children. The appellant has set out counter-arguments to challenge all the grounds found by the trial court to justify the termination of J.B.'s parental rights.

### B. TENN. CODE ANN. § 36-1-113(G)(9)(VI)

We believe that the grounds of abandonment and severe child abuse have been proven by clear and convincing evidence. As for the ground of failure to comply with the requirement of Tenn. Code Ann. § 36-1-113(g)(9)(vi) that a defendant petition the court to establish paternity within thirty days of being notified of the alleged paternity, that ground has been foreclosed by a recent opinion of the Tennessee Supreme Court.

In *Jones v. Garrett*, 92 S.W.3d 835 (Tenn. 2002), our Supreme Court held that by its own terms, the statute at issue only applies where the defendant's paternity had not been legally established by the time of the termination hearing. Since J.B. acknowledged that he was the father

of the twins after the DNA test was returned, and the trial court granted his Petition to Establish Paternity prior to the termination hearing, the statute does not apply to him.

## C. Child Abuse

As we stated above, we believe the record shows by clear and convincing evidence two different grounds for termination of J.B.'s parental rights, abandonment and child abuse. In the interest of judicial economy, we will only address the question of abuse.

Tenn. Code Ann. § 36-1-113(g)(4) describes the ground of abuse as follows:

> The parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against the child who is the subject of the petition or against any sibling or half-sibling of such child, or any other child residing temporarily or permanently in the home of such parent or guardian.

The definition of severe child abuse found in Tenn. Code Ann. § 37-1-102 includes aggravated rape or incest of a child. Tenn. Code Ann. § 39-15-302 states that a person commits incest if he knowingly engages in sexual penetration with "[t]he person's natural parent, child, grandparent, uncle, aunt, nephew, niece, stepparent, stepchild, adoptive parent, adoptive child." Appellant argues that this ground is inapplicable to him, because there is no evidence that he ever abused the twins, and because M.J. was not a minor when he impregnated her. In the alternative, he contends that M.J.'s testimony as to his abuse of her was not clear and convincing because it was uncorroborated.

We agree that no allegations were made, and no evidence was presented, that J.B. abused the twin girls. But M.J. testified as to a long history of sexual abuse that she suffered at the hands of J.B. She stated that it began when she was nine years old, when J.B. stripped her down on the pretext of looking for marks on her body that he could record on an identification card sent home by her school as part of a program to protect children from kidnappers. She stated that he looked at the body for a long time, and that he fondled her genital areas while doing so.

M.J. also testified that at the age of thirteen she woke up one night to find him performing oral sex on her. She claimed that from then on there were frequent incidents of J.B. fondling and touching her, including squeezing her vagina, and of J.B. grabbing her hand and putting it on his genitals. M.J. testified that the first full sexual intercourse between her and her stepfather occurred when she was seventeen years old. Afterwards, such incidents became a regular feature of life in the household, with J.B. usually demanding sexual intercourse when M.J.'s mother was at work, and J.B. had been drinking or taking drugs. This continued even after the birth of the twins.

-4-

Not surprisingly, J.B.'s testimony was at odds with that of M.J. He admitted to only one act of intercourse with his stepdaughter, which because of the DNA evidence, he could hardly deny. He also testified that he frequently became so drunk that he passed out, and that when he woke up, he didn't know what he had done while drunk. This circumstance makes his testimony of limited value in uncovering the truth as to his conduct, as the following excerpt indicates.

Q. Is it your testimony, Mr. [B] that that was the only and only time you ever had sexual relations with [M]?

A. To my knowledge, yes.

Q. Could there have been times other than the one incident where the girls were conceived, could there be other times that you had sex with her that you just don't remember?

A. I have said that before, yes.

Q. There could have been times when she was 19 or 18, that you could have had sex with her and you just don't remember it?

A. Possibly, yes.

Q. There could have been times when she was 16 or 17 that you've had sex with her and you just don't remember it?

A. I don't think so.

The trial court specifically found "by clear and convincing evidence" that the testimony of M.J. was "far more credible than the testimony of [JB]," and that J.B. had committed severe child abuse against M.J. while she was a child residing in his home. A trial court's determinations of credibility are entitled to great deference on review. *Wells v. Tennessee Board of Regents,* 9 S.W.3d 779 (Tenn. 1999).

Appellant argues that because there was no direct corroboration of M.J.'s testimony, and because M.J.'s stepsister (J.B.'s daughter by a previous marriage) had defended her father by testifying that she had not been abused or approached by him in a sexual manner during her childhood years, the evidence should not have been characterized as clear and convincing. There is no rule, however, that requires the testimony of more than one witness for a finding of clear and convincing evidence. Moreover, M.J.'s testimony is bolstered by the irrefutable evidence of incest, and by J.B.'s inability to categorically deny her allegations of prior abuse.

We also reject the appellant's argument that even if J.B. was guilty of abusing M.J. while she was still a minor, this still does not meet the requirements of Tenn. Code Ann. § 36-1-113(g)(4), because the alleged child abuse did not occur during the lifetime of the twins. This is an attempt to read into the statute a limitation that is not supported by its text, or by any case of which we are aware. We thus agree with the trial court that the appellee has met its burden of producing evidence of abuse sufficient to support the termination of J.B.'s parental rights.

### III. BEST INTEREST

As to the question of best interest, we believe that the appellee proved by clear and convincing evidence that it was in the best interest of the minor children to terminate J.B.'s parental rights. The trial court found that J.B. is in prison, and is likely to remain there for at least another twenty months; that there is no longer any meaningful relationship between J.B. and the twins; that J.B. has an extensive history of drug and alcohol abuse; that he also has a history of violence against other members of his family; that a change of caretakers is likely to have a negative effect on the children's emotional, psychological and medical condition; and that the children have been with the same foster parents since January 8, 2000, with the possibility of adoption into that family.

These findings are all supported by evidence in the record, and appellant does not seriously dispute any of them, although J.B. claims that he completely stopped his use of alcohol and drugs after October 31, 1999. Appellant's sole argument is that the court is not entitled to consider the best interest of the children without a finding that a ground for termination has been proven by clear and convincing evidence, and of course he disputes the existence of such grounds. But since we have affirmed the trial court's determination of at least one of those grounds, appellant's argument is moot.

## IV. CHILD SUPPORT

The appellee notes that the authority of the trial court in termination cases to award child support arrearages is set out in Tenn. Code Ann. § 36-1-113 which reads in pertinent part as follows:

> (l)(1) An order terminating parental rights shall have the effect of severing forever all legal rights and obligations of the parent or guardian of the child against whom the order of termination is entered and of the child who is the subject of the petition to that parent or guardian . . . . It shall terminate the responsibilities of that parent or guardian under this section for future child support or other future financial responsibilities even if the child is not ultimately adopted; provided, that the entry of an order terminating the parental rights shall not eliminate the responsibility of such parent or guardian for past child support arrearages or other financial obligations incurred for the care of such child prior to the entry of the order terminating parental rights.

It appears to us, however, that the trial court can exercise its authority to award past child support in termination cases only if the issue has been tried. Parties should include every claim for relief they wish to assert in their pleadings. However, even if a claim has been omitted from the pleadings, the court can still rule on it if the issue has been tried by consent. *See* Rule 15.02, Tenn. R. Civ. P.; *Rawlings v. John Hancock Mut. Life Ins. Co.,* 78 S.W.3d 291 (Tenn. Ct. App. 2001); *Varley v. Varley*, 934 S.W.2d 659 (Tenn. Ct. App. 1996).

Though the pleadings in the present case include abandonment by reason of failure to support as a ground for termination, they do not include a claim for past child support. The only other language in the pleadings that might remotely support such a claim is the final boilerplate request

"for such other, further and general relief as may be necessary." The only question then is whether the issue of arrearages was tried by consent.

We note that there is no prior child support order in the record. We have also found no mention of child support arrearages in the trial transcript, prior to the court's ruling from the bench. There was some testimony as to J.B.'s earnings as a roofer, elicited from both himself and from his employer, who is also his brother-in-law, but insofar as any of that evidence was relevant to any issue before the court, it appears to have been directed to the question of abandonment by reason of willful non-support.

While the trial court's final order (which was prepared by the appellee) made J.B. responsible for past child support in the amount to $14,404, the only rationale expressed for this award was the observation that J.B. had testified that he had earned $660 a week prior to his incarceration. There is no explanation as to how the connection was made between his weekly salary and a child support obligation. In light of the fact that the appellant has had no opportunity to address the propriety of a child support award, or challenge the calculations relied upon by the trial court, we believe that award should be reversed.

## V.

The termination of the appellant's parental rights is affirmed. That portion of the trial court's order which obligated him to pay past child support is reversed. Remand this cause to the Juvenile Court of Williamson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant, J.B.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.