IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 14, 2015 Session

## KENNETH DEANGELO THOMAS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2002-A-446      Seth W. Norman, Judge**

_____

**No. M2014-00884-CCA-R3-ECN - Filed April 1, 2015**

_____

In 2003, Kenneth Deangelo Thomas, the Petitioner, was convicted of felony murder and sentenced to life. In 2012, Paul Talley, an accomplice who testified against the Petitioner, executed a sworn statement claiming he lied about the Petitioner's involvement in the murder. The Petitioner filed a petition for writ of error coram nobis based on the newly discovered evidence. Following a hearing in which Mr. Talley testified, the coram nobis court found Mr. Talley was not credible and dismissed the petition. Following a review of the record, we affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

Jeffrey O. Powell, Goodlettsville, Tennessee, for the appellant, Kenneth Deangelo Thomas.

Herbert H. Slatery, III, Attorney General and Reporter; David H. Findley, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Dan Hamm, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Petitioner was convicted by a Davidson County jury for the murder of Andrew Lewis Titus during the perpetration of a robbery. By judgment entered October 16, 2003, the trial court sentenced the Petitioner to life. After his motion for new trial was denied, the Petitioner appealed, raising one issue–whether the indictment should be dismissed with

prejudice due to a violation of the Interstate Agreement on Detainers. This Court affirmed the conviction on direct appeal. State v. Kenneth Deangelo Thomas, No. M2004-03069-CCA-R3-CD, 2006 WL 521426, at *1 (Tenn. Crim. App. Mar. 3, 2006), perm. to app. denied (Tenn. Oct. 30, 2006).

Paul Talley, an alleged accomplice, testified against the Petitioner at trial. At the time of his testimony, Mr. Talley was serving a 15-year sentence in the Tennessee Department of Correction for facilitation of murder. He testified that he had not been promised a plea agreement in exchange for his testimony.

On December 6, 2012, Mr. Talley recanted his testimony in a sworn, notarized statement, which reads as follows:

> I, Paul Eugene Talley, being of sound mind and body, and under no threat of bodily harm, do hereby make and sign the following affidavit under penalty of perjury:
>
> In October of 2003, I falsely testified for the State of TN in the murder trial of Kenneth D. Thomas; specifically, all testimony that Mr. Thomas was in any way involved before, during, or after the fact in the crime in question was untruthful. Having previously testified against Mr. Thomas in an unrelated case (in August of 2000) resulting in Mr. Thomas's acquittal and my going to prison to serve a sentence of 15 years, I was upset and angry. Taking advantage of my anger, the two assistant district attorneys in the unrelated case, Lisa Naylor and Pamela Anderson, soon thereafter offered me a deal in return for my "helping get Mr. Thomas off the streets;" this deal would turn out to be my testimony in the October of 2003 case. As I was also indicted in the October 2003 case that Mr. Thomas was soon to be tried on, in return for my helping to secure Mr. Thomas's conviction I was to receive a 4-year sentence to run concurrently with the 15-year sentence I was already serving; instead of a facilitation of murder charge, my charges would be dropped to attempted robbery. Let me be clear by stating that this deal was offered to me *long before* Mr. Thomas's trial; however, it was decided best not to put this deal in writing before my testimony and Mr. Thomas's conviction. But this is the deal I was offered, and this was the deal I received. I am willing to testify to this.
>
> Again, I am under no duress whatsoever nor have I been threatened by anyone to sign this affidavit. Nor have I been offered any monetary gains or anything otherwise. This is just the right thing to do. Mr. Thomas is innocent of the

crime in which placed [sic] him in prison. I have turned my life over to God and have decided to right the wrongs of my past. I hope and pray this helps. Thank you.

On March 11, 2013, the Petitioner filed a pro se petition for writ of error coram nobis, attaching as exhibits a transcript of the trial testimony of Mr. Talley and a copy of the December 6, 2012, sworn statement. The trial court appointed counsel who filed an amended petition for writ of error coram nobis. An evidentiary hearing was held on February 18, 2014, in which Mr. Talley testified. The trial court took the matter under advisement. By written order filed on April 2, 2014, the trial court found the Petitioner had failed to prove that he was entitled to relief and dismissed the petition. In its detailed and thorough order, the coram nobis court stated:

The facts at trial showed that, on the night of January 31, 1999, the Petitioner, Torrey Glenn, Marquese Woods and Paul Talley were driving in Davidson County, Tennessee when they saw Andrew Titus walking near 9th Avenue North and Buchanan Street. They parked the vehicle, armed themselves and approached Mr. Titus while Mr. Talley stayed behind to act as lookout. The three other men ultimately shot and killed Mr. Titus and then fled the scene.
. . .
The Petitioner and Mr. Talley were co-defendants on an earlier case, 99-C-1796, in which they were charged with felony murder, first degree murder and aggravated robbery. Mr. Talley testified against the Petitioner in that trial, however, the jury acquitted the Petitioner of the charges on August 2, 2000. On November 30, 2000, Mr. Talley entered a guilty plea to facilitation of first degree murder and received a sentence of Fifteen years at 30%. In the present case, Mr. Talley entered a guilty plea to the offense of attempted robbery and received a sentence of four years at 30% to run concurrent with 99-C-1796 on October 31, 2003.

The crux of Petitioner's claim in this matter is that Mr. Talley lied at trial as to Petitioner's presence at the scene and his involvement in the murder. Mr. Talley also contends that the State offered him a plea bargain for attempted robbery with a 4-year concurrent sentence in exchange for his testimony against the Petitioner, however, he denied the existence of any such agreement at trial. Petitioner contends that Mr. Talley was motivated to testify against him by the fact that he could receive a relatively minor sentence for his involvement in the crime[.] He also asserts that Mr. Talley testified against him for vindictive reasons after Mr. Talley was convicted in 99-C-l796 and sentenced to fifteen years, while the Petitioner was acquitted.
. . .

-3-

At trial, Mr. Talley testified to basically the same events he set forth in his initial statement to the police on April 14, 1999 and then again on February 15, 2002. The only difference between the two statements was which weapons were used by which co-defendants in the murder, a mistake he had made based on who actually owned the weapons. Mr. Talley initially stated that Petitioner used the Tec-9 pistol, while Mr. Woods had the shotgun, but in his second statement recalled that in fact the opposite was true.

It seems somewhat incredulous that Mr. Talley's statements to the police remained virtually unchanged long before any alleged plea offer was advanced by the State in exchange for the exact same testimony at trial, yet now he desires to clarify the sequence of events and help the Petitioner only after having completed his other sentence and parole term, ostensibly with nothing to lose. Furthermore, other witnesses placed Mr. Talley and the Petitioner together that night just prior to the murder. Mr. Talley's brother, Frederick Talley, stated that the Petitioner, Mr. Woods and Mr. Glenn stopped by his home to pick up Mr. Talley that night. Moreover, there is no evidence that any agreement to testify in exchange for a lesser sentence ever existed between Mr. Talley and the State. At trial, the State questioned him specifically and extensively as to whether any such agreement had been forged and he testified in the negative. Immediately after his response at trial, Mr. Talley continued by stating "I hope to get something out of it, but no promise guaranteed have been told to me." While there may have ultimately been some willingness on the behalf of the prosecution to show leniency in making a plea offer based on Mr. Talley's trial testimony, no proof exists to support the allegation that it was advanced prior to Petitioner's trial.

Other proof at trial corroborated the evidence of the co-defendants who testified against the Petitioner at trial. The jury charge included the appropriate instructions regarding accomplices. The Petitioner testified in his own behalf, however, the jury evidently credited testimony of Mr. Talley and Mr. Glenn over that of the Petitioner and entered a judgment of conviction for the murder of Mr. Titus. Considering the proof at trial in this matter, it appears as though there existed ample evidence for the jury to conclude that the Petitioner was guilty of the crime charged, either personally or by criminal responsibility for the conduct of another. Even if the Court were to find the recent testimony of Mr. Talley reliable, the Court remains unconvinced that such testimony would have affected the outcome of the trial had it been presented.

Citing State v. Hart, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995), for the proposition that the court should deny relief if it does not believe the witnesses presented at a coram nobis hearing are credible, the coram nobis court found Mr. Talley was not credible and dismissed the petition.

**Analysis**

*Error Coram Nobis Relief*

A writ of error coram nobis is an "extraordinary procedural remedy," filling only a "slight gap into which few cases fall." State v. Mixon, 983 S.W.2d 661, 672 (Tenn. 1999) (citation omitted). Tennessee Code Annotated section 40-26-105(b) provides that coram nobis relief is available in criminal cases as follows:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Unlike the grounds for reopening a post-conviction petition, the grounds for seeking a petition for writ of error coram nobis are not limited to specific categories. See Harris v. State, 102 S.W.3d 587, 592 (Tenn. 2003). "Coram nobis claims may be based upon any 'newly discovered evidence relating to matters litigated at the trial' so long as the petitioner establishes that he or she was 'without fault' in failing to present the evidence at the proper time." Id. at 592-93 Coram nobis claims are "singularly fact-intensive," are not easily resolved on the face of the petition, and often require a hearing. Id. at 593.

"[I]n a coram nobis proceeding, the trial judge must first consider the newly discovered evidence and be 'reasonably well satisfied' with its veracity. If the defendant is 'without fault' in the sense that the exercise of reasonable diligence would not have led to a timely discovery of the new information, the trial judge must then consider both the evidence at trial and that offered at the coram nobis proceeding in order to determine whether the new evidence *may have* led to a different result**.**" State v. Vasques, 221 S.W.3d 514, 527 (emphasis in original). In determining whether the new information may have led to a

different result, the question before the court is "whether a reasonable basis exists for concluding that had the evidence been presented at trial, the results of the proceedings might have been different." Id. (citing State v. Roberto Vasques et al, No. M2004-00166-CCA-R3-CD, 2005 WL 2477530, at *13 (Tenn. Crim. App. Oct. 7, 2005)). The decision to grant or deny coram nobis relief rests within the sound discretion of the trial court. Id. at 527-28.

*Recanted Testimony*

State v. Mixon, 983 S.W.2d 661 (Tenn. 1999),  involved recanted testimony of a victim of attempted rape, incest, and sexual battery.[1]  The coram nobis court denied the petition for writ of error coram nobis finding that recanted testimony does not constitute new evidence. Id. at 665. This court concluded that the coram nobis court erred and that recanted testimony can constitute new evidence. Id. at 666. Our Supreme Court quoted this court's majority opinion, which set forth a three-prong test concerning recanted testimony:

> [t]he test for granting a new trial in cases involving recanted testimony is as follows: (1) the trial judge is reasonably well satisfied that the testimony given by a material witness was false and that the new testimony is true; 2) the defendant was reasonably diligent in discovering the new evidence or surprised by false testimony, or unable to know of the falsity until after the trial; and 3) the jury might have reached a different conclusion had the truth been told.

 Id.. After review, our Supreme Court agreed with this court that recanted testimony, as a matter of law, may constitute newly discovered evidence and adopted the three-prong test this court enunciated to determine whether a new trial should be granted based upon newly discovered recanted testimony. Id. at 672-73.

In this case the coram nobis court correctly applied the three-prong test and found that Mr. Talley was not credible and therefore his new testimony was false. The coram nobis court further stated that, even if it had found Mr. Talley's recanted testimony to be reliable, it would not have changed the outcome of the trial.

The coram nobis court was able to see and hear Mr. Talley as he testified and was in the best position to judge Mr. Talley's credibility. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990). "Questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence are resolved by

---

[1] Mixon was procedurally complicated and involved a consolidation of the direct appeal and coram nobis appeal and issues concerning the statute of limitations.

the trier of fact, and not in the appellate courts." Id. This Court will not "re-evaluate" the coram nobis court's "assessment" of Mr. Talley's credibility "absent clear and convincing evidence to the contrary." Wells v. Tennessee Bd. of Regents, 9 S.W.3d 779, 783 (Tenn. 1999). This record contains no clear and convincing evidence to the contrary. Accordingly, the coram nobis court was not "reasonably well satisfied that the [trial] testimony given by a material witness was false and that the new testimony is true." See Mixon, 938 S.W.2d at 666. Therefore, the Petitioner's newly discovered evidence does not support issuance of a writ of error coram nobis. See id.

## Conclusion

We conclude the coram nobis court did not abuse its discretion in dismissing the petition. The judgment of the coram nobis court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE