IN THE COURT OF APPEALS OF TENNESSEE
AT  KNOXVILLE
May 15, 2015 Session

## JERRY BUNDREN v. THELMA BUNDREN, ET AL.

**Appeal from the Circuit Court for Claiborne County**
**No. 13-CV-950      Andrew R. Tillman, Chancellor Sitting By Interchange**

---

### No. E2014-01090-COA-R3-CV-FILED-JUNE 12, 2015

---

Thelma Bundren and George David Bundren ("Defendants") appeal the order of the Circuit Court for Claiborne County ("the Trial Court") finding and holding, *inter alia*, that the survey prepared by Comparoni & Associates establishes the boundary lines between real properties owned by Defendants and real property owned by Jerry Bundren ("Plaintiff"). We find and hold that the evidence does not preponderate against the Trial Court's findings, and we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**
**Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., C.J., and JOHN W. MCCLARTY, J., joined.

George David Bundren, Tazewell, Tennessee, and Thelma Bundren, Gatlinburg, Tennessee, *Pro se* appellants.

Lindsey C. Cadle, Tazewell, Tennessee, for the appellee, Jerry Bundren

## OPINION

### Background

Plaintiff and Defendants are siblings and some of the children of Agie[1] Bundren[2] ("Decedent"), who died in August of 2000. Plaintiff and Defendants each own parcels of real property located in Claiborne County, Tennessee, which previously had been owned by Decedent[3]. The real property owned by Thelma Bundren borders a portion of the real property owned by Jerry Bundren on one side, and the real property owned by David Bundren borders a portion of the real property owned by Jerry Bundren on another.

Decedent's Last Will and Testament was admitted to probate in 2000. Subsequently, six of Decedent's children filed a petition in Claiborne County Probate Court ("the Probate Court") against their brother, Jerry Bundren, seeking, among other things, to have specific deeds purporting to convey real property owned by Decedent set aside. The case proceeded to trial and then appeal, and on November 23, 2004 this Court issued its Opinion in *In re: Estate of Agie Bundren*, No. E2003-02746-COA-R3-CV, 2004 WL 2709154 (Tenn. Ct. App. Nov. 23, 2004), *no appl. perm. appeal filed* ("*Estate of Agie Bundren*").

In *Estate of Agie Bundren*, this Court affirmed the decision of the Probate Court holding, *inter alia*, that some specific deeds to real property executed by Decedent, including ones to Thelma Bundren and David Bundren, were invalid for lack of delivery.[4] *Id*. at *4. Our Opinion in *Estate of Agie Bundren* remanded the case to the Probate Court for, among other things, division of the real property described in the invalidated deeds in accordance with the Last Will and Testament of Agie Bundren.

The Probate Court entered an order on July 29, 2008 that stated, in pertinent part:

---

[1] In the record before us on appeal Decedent's name is spelled in some places as 'Agee' and in other places as 'Agie.' We are unable to tell from the record before us which is the correct spelling.

[2] Agie Bundren was survived by a wife and seven children.

[3] Plaintiff obtained a portion of the real property that he owns prior to Decedent's death. Plaintiff obtained another portion through the Last Will and Testament of Agie Bundren. Defendants each own his or her own parcel of real property, which they each obtained through the Last Will and Testament of Agie Bundren after this Court invalidated some specific deeds due to lack of delivery.

[4] The deeds at issue were executed by Decedent and then placed into a lockbox where they remained until after Decedent's death, and the Probate Court found that Decedent had retained possession and control of these deeds until his death. *Estate of Agie Bundren*, 2004 WL 2709154 at *4.

A tract of land consisting of approximately 168 acres conveyed to Jerry Bundren by Agee Bundren by deed dated March, 1996, was upheld as a valid conveyance by the Tennessee Court of Appeals. The boundaries of said deed overlap with parcels of property devised to Thelma Bundren and David Bundren by the Last Will and Testament of Agee Bundren. The Administrator shall commission Dennis Fultz, a licensed land surveyor, to survey the overlapping areas and determine the appropriate boundary lines. The Court further held that the doctrine of ademption applied in this case, to the extent that the lands contained in the 1996 deed to Jerry Bundren were properly conveyed and therefore were not part of Agee Bundren's estate. The costs of said surveying shall be borne equally between Jerry Bundren, Thelma Bundren and David Bundren.

After further proceedings, the Probate Court filed an order on October 5, 2011 that stated, in pertinent part: "Additionally, any disputes between Jerry Bundren, Thelma Bundren and David Bundren concerning boundaries or fences are the responsibility of the individuals involved and are not properly an issue of this estate."

By order entered September 6, 2012 the Probate Court ordered the Estate of Agie Bundren closed. The September 6, 2012 order also stated, in pertinent part:

Pursuant to the order [filed on October 5, 2011], the Court had previously ruled as follows:

"Any boundary disputes between the heirs, occasioned by the descriptions contained in the Administrator's Deeds or otherwise, are the responsibility of the individual recipients of the realty and the Estate has no obligation to address said disputes. Additionally, any disputes between Jerry Bundren, Thelma Bundren and David Bundren concerning boundaries or fences are the responsibility of the individuals involved and are not properly an issue of this estate." The Court reaffirms its ruling of September 13, 2011 [filed on October 5, 2011], in regard to the personal disputes between the parties, and the Estate shall have no obligation to be involved in said disputes.

Plaintiff filed the instant suit in April of 2013 seeking, among other things, an order determining the boundaries between the real properties owned by the parties and ordering Defendants to pay a share of the cost of the survey prepared to establish said boundaries. The case proceeded to trial without a jury in February of 2014.

Licensed land surveyor Mark A. Comparoni testified at trial. Mr. Comparoni surveyed Plaintiff's property to determine the boundary lines. Mr. Comparoni explained

that he became involved in preparing the survey when he received a call from Dennis Fultz in May of 2012. Mr. Fultz stated that he was not physically able to do the survey and asked if Mr. Comparoni would do the survey. Mr. Comparoni testified that he was willing to do the survey as long as he and Mr. Fultz could agree as to "where all the lines went that he was supposed to survey."

Mr. Comparoni and Mr. Fultz visited the property on May 23, 2012 and "toured the corners" that Mr. Comparoni then surveyed. Mr. Comparoni stated that he and Mr. Fultz agreed "entirely" as to the location of the corners. Mr. Comparoni surveyed the property from June 5, 2012 through June 13, 2012 and drew a plat on June 13, 2012.

Mr. Comparoni was asked to describe how he conducted his survey, and he stated:

Well, what we were doing, we were surveying the Jerry Bundren deed recorded in Deed Book 234, page 29. And as I read the court orders that Mr. Fultz provided to me, that deed was ruled the valid deed and that's what was to hold - - determine in these lines between he and his sister Thelma and his brother David. That's the way I read the court order and that's the way Mr. Fultz read it.

Jerry's deed starts down here. It says at a White Oak. And there is a triple limb mentioned in his deed too. I believe we found those. I believe the tree is actually an Ashe tree, which is very easily confused with a White Oak, but I believe we found those two trees. They had hacks in them. They were in a fence line. They were right here at the mouth of this hollow that comes up through here. Dennis Fultz pointed that out to me. And then on a separate occasion, after he pointed it out to me, Jerry Bundren pointed it out to me as being the corner of his deed.

* * *

Now, the next column of the Jerry Bundren deed, in 234, 29, it calls for running up this hollow on the north side of the hollow. That's not mathematically defined. So we've got a line that goes up the hollow, but we don't know how far north or south - - we don't know how far north of the hollow the line is supposed to be.

Now, Dennis Fultz and I talked this over, and we used Thelma Bundren's deed recorded in 1047, page 301. Now, while it's true that that deed was voided by the Court of Appeals, this deed was still written and

-4-

signed by her father, Agie Bundren - - well, I don't know if it was written by Agie Bundren, but it was signed by him.

So Thelma's deed starts here at the same tree and comes up this hollow, and it says 100 feet north of the hollow. That's what we used. Because as Agie Bundren signed Thelma Bundren's deed, that was the best way that Dennis Fultz and I could determine the other pin - -

\* \* \*

And like I said, while that deed was ruled invalid by the Court of Appeals, it still showed us the intent of what their father wanted and how he wanted that divided while he was living.

Jerry Bundren's deed is not mathematically defined, so we had to have some supporting evidence to show what the intent of that was; that's why we put that line 100 feet north of the hollow.

Mr. Comparoni was asked to explain how he located the line that borders with land owned by David Bundren, and he stated:

Well, this line right here calls for - - Jerry Bundren's deed calls for this power pole right here, it's power pole 307, and there is a plate in the side of it that's got a "307" on it.

And then it calls for running southwardly down here to "this" corner - - there is supposed to be an angle iron down here, but I looked and there is not. Dennis Fultz told me there was a fence that at one time went down this line and Jerry Bundren told me there was a fence at one time that went down this line. Now, there was no fence there, but it did look like on the ground there had been a fence there. . . . Well, there is a very old fence that comes up like this and corners - - where I've got these little X's here, are a fence, and I followed this fence down to this hollow and then his line takes off down the hollow from there. But that's where I was told I was supposed to stop, because he didn't join David any more after that.

Mr. Comparoni was asked if he believed that his portrayal of the boundary line in his survey is accurate, and he stated: "I believe it to be. Like I said, there is things you have got to interpret as a surveyor that are not mathematically defined, so you got to use the best evidence you got, and I believe that's what we did."

Mr. Comparoni was asked why he did not notify David Bundren about alleged discrepancies in the boundary, and he stated: "I didn't think there was discrepancies there, period. I thought the deeds spoke very well for themselves if you considered all of them." Mr. Comparoni stated: "I use every piece of information I have, verbal or written. . . . I did the survey per Jerry Bundren's deed. I used supporting parol evidence given to me by Dennis Fultz and Jerry Bundren that happened to match the wording that I felt was in the deed."

Mr. Comparoni was asked if the standards of practice required of a surveyor included showing powerlines and easements, and Mr. Comparoni stated that ordinarily such things are charted, but since the court order ruled that Mr. Fultz was to perform a survey of the boundary line between land owned by Jerry Bundren and land owned by Thelma Bundren, and the boundary line between land owned by Jerry Bundren and land owned by David Bundren, that is what Mr. Comparoni did. Mr. Comparoni noted on the plat he prepared that he did not locate any easements, but instead surveyed only the court-ordered line.

Licensed surveyor Dennis Fultz also testified at trial. Mr. Fultz was asked if it were important always to show right-of-ways, utility lines, and roads on every survey, and he stated:

> Of course not. . . . We have got rules that control the minimum standards for surveying. Some things are of particular importance and some are not. This is not a standard-fee surveying project; this was a walk out and see if you can establish a line between these warring parties. So the location of that utility didn't have a darn thing to do with your boundary or Thelma's either.
>
> So it wouldn't be of particular importance as regards the dispute that you-all got going if you showed every one a right easement up there.

Mr. Fultz testified that he agrees with all of the lines shown on the survey prepared by Mr. Comparoni.

After trial the Trial Court entered its order on May 6, 2014 finding and holding, *inter alia*:

> This cause came to be heard on the 18th day of February, 2014, before the Honorable Andrew R. Tillman, Chancellor, sitting by interchange for the Circuit Court for Claiborne County, Tennessee at Tazewell, upon the pleadings, testimony of witnesses including two (2)

-6-

licensed surveyors, statements of counsel, and the entire record in this cause, from all of which the Court duly finds that the Respondents are not responsible for a portion of the survey conducted by Comparoni & Associates, and further a boundary is hereby established in accordance with a survey composed by Comparoni & Associates recorded in the Claiborne County Register of Deed's [sic] Office, Plat Book 5, Page 169.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the costs of the previous survey conducted by Mark Comparoni, Comparoni & Associates shall be the sole responsibility of the Petitioner.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Petitioner carried the burden establishing a boundary line as set forth in the survey composed by Mark Comparoni, Comparoni & Associates, the same of which is recorded in the Register of Deed's [sic] Office for Claiborne County, Tennessee in Plat Book 5, Page 169.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the same survey, as recorded, hereby establishes the boundary line between the Petitioner, Jerry Bundren, and Respondent, Thelma Bundren, as well as the Petitioner, Jerry Bundren, and Respondent, George David Bundren.

Defendants appeal the Trial Court's May 6, 2014 order to this Court.

### Discussion

The dispositive issue in this case is whether the Trial Court erred in finding and holding that the survey prepared by Comparoni & Associates correctly depicts the boundary line between real property owned by Jerry Bundren and that owned by Thelma Bundren, and the boundary line between real property owned by Jerry Bundren and that owned by George David Bundren.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

Defendants make a number of arguments in their brief on appeal with regard to the credibility of the surveyors, Mr. Comparoni and Mr. Fultz. As our Supreme Court has instructed:

> When credibility and weight to be given testimony are involved, considerable deference must be afforded to the trial court when the trial judge had the opportunity to observe the witnesses' demeanor and to hear in-court testimony. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997) (quoting *Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996)). Because trial courts are able to observe the witnesses, assess their demeanor, and evaluate other indicators of credibility, an assessment of credibility will not be overturned on appeal absent clear and convincing evidence to the contrary. *Wells v. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

*Hughes v. Metro. Gov't of Nashville and Davidson County*, 340 S.W.3d 352, 360 (Tenn. 2011).

In the case now before us the Trial Court found Mr. Comparoni and Mr. Fultz to be credible. The evidence in the record on appeal contains no clear and convincing evidence which might call into question the credibility of these surveyors. The Trial Court had "the opportunity to observe the witnesses' demeanor and to hear in-court testimony." *Id*. As such, we give great weight to the Trial Court's determination that the testimony given by Mr. Comparoni and Mr. Fultz was credible.

Turning to the issue of whether the survey prepared by Comparoni & Associates accurately depicts the boundary lines at issue, we note that the Trial Court had before it only one survey, the one prepared by Comparoni & Associates. Both Mr. Comparoni and Mr. Fultz testified that this survey accurately depicts the boundary lines at issue. No other survey was produced and no other surveyors testified at trial. Nor were copies of the relevant deeds introduced at trial. Thus, the Trial Court had before it only one survey and the testimony of two surveyors, both of whom agreed that the survey prepared by Comparoni & Associates accurately depicts the boundary lines at issue.

After carefully and thoroughly reviewing the record on appeal, we are unable to determine that the evidence preponderates against the Trial Court's finding that the survey prepared by Comparoni & Associates accurately depicts the boundary lines at issue. As the evidence does not preponderate against the Trial Court's findings, we affirm the Trial Court's May 6, 2014 order.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellants, George David Bundren and Thelma Bundren, and their surety.

_____
D. MICHAEL SWINEY, JUDGE