# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs April 2, 2020

## IN RE ZALIYAH S. ET AL.

### Appeal from the Circuit Court for Davidson County
#### No. 17D1413         Philip E. Smith, Judge

_____

### No. M2019-01241-COA-R3-JV
_____

This is a dependency and neglect case focusing on twin siblings (collectively, "the Twins"), who are the minor children of Tamika S. ("Mother"). The Twins were taken into protective custody by the Tennessee Department of Children's Services ("DCS") upon an investigation prompted by a referral that Mother had given birth to the Twins after she had previously lost custody of one of her other children due to nutritional and medical neglect. Following Mother's refusal to comply with DCS's request to perform a health check on the Twins, DCS filed a petition for custody and emergency removal. The Juvenile Court for Davidson County ("juvenile court") conducted a hearing and adjudicated the Twins dependent and neglected upon its finding that Mother had committed severe child abuse. The juvenile court awarded DCS legal and physical custody of the Twins. Mother appealed to the Circuit Court for Davidson County ("trial court"), which, following a *de novo* trial, issued a final order determining that Mother had perpetrated severe child abuse upon the Twins while they were in her care. Consequently, the trial court adjudicated the Twins dependent and neglected. The trial court ordered that it would be in the Twins' best interest to remain in DCS custody. Mother has appealed. Discerning no reversible error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which RICHARD H. DINKINS and KENNY W. ARMSTRONG, JJ., joined.

Dustin Faeder, Nashville, Tennessee, for the appellant, Tamika S.

Herbert H. Slatery, III, Attorney General and Reporter, and Amber L. Seymour, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

## OPINION

### I. Factual and Procedural Background

The Twins were born prematurely in December 2016. It is undisputed that Mother had previously given birth to four children, two of whom were deceased within weeks of their birth due to undetermined causes, and one of whom had been adjudicated dependent and neglected and removed from Mother's custody because of nutritional neglect. Mother voluntarily relinquished custody of the fourth child to the maternal grandmother, Earlene S. ("Grandmother"). Relevant to this appeal, DCS obtained temporary custody of the Twins on January 5, 2017, pursuant to an emergency protective order entered by the juvenile court, after DCS investigator, Elizabeth Butler, was turned away by Mother when she attempted to conduct a welfare check on the Twins at Mother's residence. In the emergency order, the juvenile court set a preliminary hearing for the matter on the following day, January 6, 2017, and ordered an attachment *pro corpus* requiring Mother to deliver the Twins to DCS pending further court order.

According to the juvenile court's preliminary hearing order, when Mother appeared at the January 6, 2017 hearing without the Twins, the juvenile court magistrate ordered Mother to disclose the Twins' whereabouts. While Mother remained in the courtroom and without her cooperation, court officers located the Twins and brought them to the hearing, where Ms. Butler determined that the Twins required immediate medical care. The Twins were subsequently admitted to Vanderbilt Children's Hospital ("the Hospital") for medical treatment. Meanwhile, during the hearing, Mother testified that she had been exclusively breastfeeding the Twins and claimed that she had previously sought care for the Twins at Eve's: A New Beginning, a Nashville, Tennessee facility ("Eve's") that offers prenatal and primary care for infants. Notwithstanding, Mother refused to sign a release to allow DCS access to any records from Eve's.

Medical records later admitted as exhibits indicated that the Twins were hospitalized from January 6, 2017, through January 11, 2017. The Twins were diagnosed by Danielle Knox, a pediatric nurse practitioner at the Hospital, as victims of nutritional and medical neglect, suffering from malnourishment and failure to thrive. During the dependency and neglect hearing at issue, Ms. Knox testified that although the Twins were nearly a month old at that time, one sibling had only gained 100 grams while the other had gained no weight since birth. Ms. Knox determined that due to their poor health, the Twins' risk of death was increased. Ms. Knox also related that while at the Hospital, the Twins gained weight and became more aware and alert. The Twins were subsequently discharged from the Hospital into the care of Grandmother.

On January 9, 2017, the juvenile court appointed legal counsel for Mother and a guardian *ad litem* for the Twins. On January 13, 2017, the juvenile court awarded

supervised visitation with the Twins to Mother and required Mother to, *inter alia*, undergo a psychological assessment. Although Mother filed a motion on February 13, 2017, wherein she sought the juvenile court's permission to breastfeed the Twins, the juvenile court denied Mother's request in a subsequent order. Furthermore, pending adjudication of the Twins' custody, the trial court denied a motion in which DCS sought leave of court to vaccinate the Twins. The juvenile court subsequently scheduled the matter for an adjudicatory hearing on April 26, 2017.

At the April 26, 2017 hearing, all parties were present and represented by counsel. The juvenile court considered testimony from several witnesses but reserved its ruling until closing arguments set for May 5, 2017. In the respective order, the juvenile court magistrate determined that the Twins were dependent and neglected as to Mother upon a finding that they were severely abused. The court directed that the Twins remain in DCS custody. On June 14, 2017, Mother filed a notice of appeal with a notation stating, "Final written order still pending, DCS is to prepare it." On November 28, 2017, Mother filed a "Motion for a Written Instruction On Medical Treatment Notice," wherein she requested that the juvenile court issue an order instructing Grandmother and DCS to provide notice to Mother at any time when the Twins were to receive medical care. The motion was subsequently withdrawn.

On May 15, 2018, the juvenile court entered an "Order of Adjudication and Disposition," *inter alia*, confirming the magistrate's May 2017 ruling and sustaining DCS's petition "in its entirety." The juvenile court also delineated its factual history with Mother, specifically stating that respecting Mother's six children, two children were deceased, with one of the deaths resulting from circumstances related to inappropriate co-sleeping with Mother; one child had been removed from Mother's custody pursuant to an agreed petition to change custody; and another child had been adjudicated dependent and neglected and abused by Mother. The juvenile court further determined that Mother had repeatedly refused to follow recommended medical advice with respect to the Twins. Moreover, it concluded that Mother's conduct constituted "knowing neglect," resulting in the Twins' "substantial risk of suffering serious bodily injury or death" thereby constituting "severe abuse."

As a result of its findings, the juvenile court adjudicated the Twins "dependent and neglected, abused and severely abused" "based upon their severe nutritional and medical neglect and the risks presented . . . ." Consequently, the juvenile court ordered legal and physical custody of the Twins in the favor of DCS, which would maintain the authority to consent to any necessary medical care. The juvenile court further awarded Mother supervised visitation with the Twins. Mother filed a second notice of appeal on May 24, 2018, appealing both the adjudication and disposition of the juvenile court's ruling.

Meanwhile, in November 2018, following a separate action adjudicated by jury trial in the Davidson County Criminal Court ("criminal court"), Mother was convicted on

two counts of child neglect of a child under eight years old, a Class E felony, concerning the Twins. *See* Tenn. Code Ann. § 39-15-401(b) (2018). The criminal court sentenced Mother to serve two years' imprisonment but suspended her sentence to twenty days served upon entering an order of judicial diversion. The criminal court further ordered that Mother would serve a two-year term of supervised probation.

On appeal from the juvenile court in the case at bar, the trial court conducted a trial spanning three non-consecutive days from March 19 to March 26, 2019.[1] Upon the conclusion of trial, the trial court ordered the parties to submit proposed findings of fact and conclusions of law in lieu of closing arguments. On June 11, 2019, the trial court entered a "Memorandum Opinion and Order of Adjudication and Disposition" ("final order"), wherein it concluded, *inter alia*, that the Twins were dependent and neglected upon a finding of severe child abuse perpetrated by Mother pursuant to Tennessee Code Annotated §§ 37-1-102(b)(1) (2014); 37-1-102(b)(13)(B), (F)-(G) (West 2017); and 37-1-102(b)(27) (2014).[2] The trial court also noted that Mother had been found guilty by the criminal court of two counts of child neglect concerning a child under eight years of age. The trial court found that DCS had exercised reasonable efforts to prevent the removal of the Twins from Mother's custody. Furthermore, the trial court determined that placement of the Twins with Mother would subject them to a high risk of serious harm or bodily injury and that it was in the best interest of the Twins to remain in DCS custody.

Mother timely appealed to this Court.

## II.  Issue Presented

Mother presents a single issue on appeal, which we have restated slightly as follows:

> Whether the trial court erred by determining that Mother severely abused the Twins by knowingly failing to provide proper nutrition and medical care.

## III.  Standard of Review

Concerning the standard of review in dependency and neglect cases involving severe child abuse, this Court has previously elucidated:

---

[1] The trial also consisted of a separate and companion dependency and neglect case involving one of Mother's other children. That adjudication is not at issue in this appeal.

[2] Effective July 1, 2018, the General Assembly amended this section, recodifying Tennessee Code Annotated § 37-1-102(b)(22) to Tennessee Code Annotated § 37-1-102(b)(27). *See* 2018 Pub. Acts Ch. 1052 (H.B. 2271). For purposes of our review on appeal, we will cite to the version in effect at the time the petition was filed in January 2017.

A child who is suffering from abuse is a dependent and neglected child. *See* Tenn. Code Ann. § 37-1-102(12)(G). A determination that a child is dependent and neglected must be supported by clear and convincing evidence. *See* Tenn. Code Ann. § 37-1-129(a)(1) & (c). Severe child abuse in a dependency and neglect proceeding must also be established by clear and convincing evidence. *In re S.J.*, 387 S.W.3d 576, 591 (Tenn. Ct. App. 2012).

The "clear and convincing evidence standard" is more exacting than the "preponderance of the evidence" standard, although it does not demand the certainty required by the "beyond a reasonable doubt" standard. *In re C.W.W.*, 37 S.W.3d 467, 474 (Tenn. Ct. App. 2000). The clear and convincing evidence standard defies precise definition. *Majors v. Smith*, 776 S.W.2d 538, 540 (Tenn. Ct. App. 1989). Evidence satisfying this high standard produces a firm belief or conviction regarding the truth of facts sought to be established. *In re C.W.W.*, 37 S.W.3d at 474. Clear and convincing evidence eliminates any serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence. *Hodges v. S.C. Toof & Co.,* 833 S.W.2d 896, 901 n.3 (Tenn. 1992).

Our review of the trial court's determinations on questions of fact is de novo with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). Whether a child has been proven dependent and neglected by clear and convincing evidence is a question of law which we review de novo without a presumption of correctness. *In re H.L.F.*, 297 S.W.3d 223, 233 (Tenn. Ct. App. 2009). To the extent the trial court's determinations rest upon an assessment of the credibility of witnesses, the determinations will not be overturned absent clear and convincing evidence to the contrary. *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

*In re M.D.*, No. M2015-01023-COA-R3-JV, 2016 WL 5723954, at *3-4 (Tenn. Ct. App. Sept. 30, 2016) (quoting *In re Kaitlynne D.*, No. M2013-00546-COA-R3-JV, 2014 WL 2168515, at *1-2 (Tenn. Ct. App. May 21, 2014)).

## IV. Severe Child Abuse

On appeal from the juvenile court, the trial court determined that the Twins were dependent and neglected children upon finding that Mother had perpetrated severe child

- 5 -

abuse upon the Twins.[3]  The statutory definition of severe child abuse applicable to dependency and neglect proceedings is found in Tennessee Code Annotated § 37-1-102(b)(22) (West 2017), which provides in relevant part:

(22) "Severe child abuse" means:

(A)(i) The <u>knowing</u> exposure of a child to or the <u>knowing</u> failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the <u>knowing</u> use of force on a child that is likely to cause serious bodily injury or death;

(Emphasis added.)

On appeal, Mother concedes that the Twins were dependent and neglected as a result of her failure to properly feed them and provide medical care.  Mother contends, however, that the trial court erred by finding clear and convincing evidence that her neglect of the Twins was "knowing" as required by Tennessee Code Annotated § 37-1-102(b)(22)(A)(i) for a determination of severe child abuse.  Mother's argument here is two-fold.  First, Mother posits that the trial court improperly applied the doctrine of collateral estoppel relative to Mother's criminal convictions to establish the "knowing" requirement contained in Tennessee Code Annotated § 37-1-102(b)(22)(A)(i).  Second, Mother contends that the evidence in the record is insufficient to establish that she knowingly exposed the Twins to the risk of severe bodily injury or death.  We will address each of Mother's arguments in turn.

Concerning collateral estoppel, Mother acknowledges that in an independent criminal prosecution she was convicted by the criminal court under Tennessee Code Annotated § 39-15-401(b), which provides:

---

[3] The trial court adjudicated the Twins dependent and neglected, pursuant to Tennessee Code Annotated § 37-1-102(b)(13)(B), (F), and (G), which define a dependent and neglected child as one:

(B)     Whose parent, guardian or person with whom the child lives, by reason of cruelty, mental incapacity, immorality or depravity is unfit to properly care for such child;

***

(F)     Who is in such condition of want or suffering or is under such improper guardianship or control as to injure or endanger the morals or health of such child or others;

(G)     Who is suffering from abuse or neglect[.]

- 6 -

(b)     Any person who knowingly abuses or neglects a child under eighteen (18) years of age, so as to adversely affect the child's health and welfare, commits a Class A misdemeanor; provided, that, if the abused or neglected child is eight (8) years of age or less, the penalty is a Class E felony.

Notwithstanding her conviction under subsection 401(b), Mother contends that the trial court erred by applying the definition of "knowingly" provided in a separate subsection of Tennessee Code Annotated § 39-15-401, specifically subsection (c), to determine that her perpetration of severe child abuse, pursuant to the definition provided in Tennessee Code Annotated § 37-1-102(b)(22)(A)(i), was "knowing" in the instant action.

Tennessee Code Annotated § 39-15-401(c) (2018), the criminal child endangerment statute, provides in pertinent part:

(c)(1)  A parent or custodian of a child eight (8) years of age or less commits child endangerment who knowingly exposes such child to or knowingly fails to protect such child from abuse or neglect resulting in physical injury or imminent danger to the child.

(2)     For purposes of this subsection (c):

(B)     "Knowingly" means the person knew, or should have known upon a reasonable inquiry, that abuse to or neglect of the child would occur which would result in physical injury to the child. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary parent or legal custodian of a child eight (8) years of age or less would exercise under all the circumstances as viewed from the defendant's standpoint[.]

(Emphasis added.)

Mother asserts that because subsection 401(c)'s definition of "knowingly" is preceded by the phrase, "[f]or purposes of this subsection (c)," that definition of "knowingly" does not apply to subsection 401(b), the statute under which she was convicted. Mother contends that as a consequence, the trial court erred by applying the doctrine of collateral estoppel to prevent her from defending against the *mens rea*

- 7 -

requirement of "knowing" under the severe child abuse definition provided in Tennessee Code Annotated § 37-1-102(b)(22)(A)(i).[4]

Relative to this issue, the trial court stated the following in its final order:

This Court cannot ignore that a jury found [Mother] guilty of two (2) counts of child neglect on a child under eight (8) years old. Both of these convictions were felony convictions.

Tenn. Code Ann. § 39-15-401(c) defines child neglect on a child under eight (8) years of age. The statute states the following:

(c)(1) A parent or custodian of a child eight (8) years of age or less commits child endangerment who knowingly exposes such child to or knowingly fails to protect such child from abuse or neglect resulting in physical injury or imminent danger to the child.

(2) For purposes of this subsection (c):

(A) "Imminent danger" means the existence of any condition or practice that could reasonably be expected to cause death or serious bodily injury;

(B) "Knowingly" means the person knew, or should have known upon a reasonable inquiry, that abuse to or neglect of the child would occur which would result in physical injury to the child. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary parent or legal custodian of a child eight (8) years of age or less would exercise under all the circumstances as viewed from the defendant's standpoint;

---

[4] We note that Mother does not argue that the doctrine of collateral estoppel could not have been applied by the trial court; rather, Mother argues that the trial court referenced an inapplicable definition of "knowingly" located in Tennessee Code Annotated 39-15-401(c), a subsection under which she was not convicted, regarding subsection 401(b), and in turn applied the same definition to collaterally estop her from contesting a determination of severe child abuse pursuant to Tennessee Code Annotated § 37-1-102(b)(22). Stated differently, Mother argues that the definition in subsection 401(c) does not apply to subsection 401(b). Ergo, Mother does not dispute that a criminal conviction may be used to prevent a litigant from subsequently relitigating severe child abuse in an ensuing civil action provided there is some comparison of the criminal conviction with the definition of severe child abuse located in Tennessee Code Annotated § 37-1-102(b)(22). *See In re C.S.*, No. E2019-01657-COA-R3-PT, 2020 WL 2066247, at *4 (Tenn. Ct. App. Apr. 29, 2020) ("Courts have also relied on criminal convictions to establish the ground of severe abuse.").

and

> (C) "Parent or custodian" means the biological or adoptive parent or any person who has legal custody of the child.
>
> The definition of "knowingly" in Tenn. Code Ann. § 39-15-401(c)(2)(B) sets forth a meaning remarkably similar to the meaning of "knowing" set forth by the Court of Appeals. *In Re R.C.P.*, [No. M2003-01143-COA-R3-PT, 2004 WL 1567122 (Tenn. Ct. App. July 13, 2004)]. The Court is also mindful that the jury was required to adhere to the stricter standard of proof "beyond a reasonable doubt." "Knowingly" is an essential element of the offenses [Mother] was convicted of.
>
> * * *
>
> There is no serious or substantial doubt in this Court's mind that the abuse committed by [Mother] was "knowing" within the meaning of the case law. . . . [Mother] "knowingly" failed to protect [the Twins] from the abuse or neglect that almost caused their deaths.

In the instant action, the trial court relied in part on the definition of "knowingly" found in the child endangerment statute, Tennessee Code Annotated § 39-15-401(c), in support of its determination of the existence of severe child abuse under Tennessee Code Annotated § 37-1-102(b)(22)(A)(i). However, Mother was not convicted under Tennessee Code Annotated § 39-15-401(c); rather, she was convicted under subsection (b), which does not statutorily define "knowingly." Moreover, the Tennessee Court of Criminal Appeals has previously explained that the "knowing" *mens rea* requirement is exclusive to offenses involving child endangerment under Tennessee Code Annotated § 39-15-401(c). *See State v. Love*, No. M2015-00183-CCA-R3-CD, 2016 WL 4697583, at *11 (Tenn. Crim. App. Sept. 7, 2016) (rejecting the State's argument that the "knowing" requirement, as defined in Tennessee Code Annotated § 39-15-401(c), applies to child abuse or neglect as codified in § 39-15-401(b)). Thus, the trial court erred to the extent that it relied on the definition of "knowingly" found in Tennessee Code Annotated § 39-15-401(c), a statute under which Mother was not convicted, to establish that the "knowing" requirement found in the severe child abuse statute, Tennessee Code Annotated § 37-1-102(b)(22)(A)(i), had been satisfied.[5] However, as more fully

---

[5] To clarify, what rendered the trial court's application of collateral estoppel erroneous was its improper use of an inapplicable statute, Tennessee Code Annotated § 39-15-401(c), to prevent Mother from specifically defending against the severe child abuse statute codified at Tennessee Code Annotated § 37-1-102(b)(22). Thus, our determination does not disrupt the well established principle that criminal convictions may serve to establish the ground of severe child abuse under Tennessee Code Annotated § 37-1-102(b)(22), thereby collaterally estopping a litigant from relitigating the same issue(s) previously litigated in his or her prior criminal conviction. *See, e.g., In re C.S.*, 2020 WL 2066247, at *4; *In re*

discussed below, because the trial court found sufficient proof of severe child abuse based upon the totality of the evidence presented at trial, we determine this error to be harmless.

Mother also contends that the evidence in the record is insufficient to establish that she knowingly exposed the Twins to the risk of severe bodily injury or death. In support of her argument, Mother in part relies on her own testimony and her having taken the Twins to Eve's for medical attention two weeks prior to the Twins' removal from her custody. Specifically, when confronted with photographs of the Twins' poor physical condition at trial, Mother testified concerning one of the twins, "I don't remember my child looking like this before you guys picked him up at all." Regarding the other twin, Mother related, "I do not remember my child looking like that before they came, no."

Mother further testified that the Twins' poor condition was the result of her unsuccessful attempts to breastfeed, stating, "I was feeding my babies, but, apparently, they wasn't getting enough milk from my breasts, but I was feeding my babies." Mother explained that she was feeding the Twins every two to three hours during the day and every three to four hours at night. In her brief on appeal, Mother makes several additional references to her testimony, as well as to the testimony of Grandmother and a DCS family service worker, which Mother claims establish that she did not comprehend the seriousness of the risk to the Twins' health and well-being. Thus, Mother posits that by not understanding the severity of the risk, she did not possess sufficient knowledge to have committed severe child abuse. Upon careful review, we find Mother's argument in this regard to be unavailing.

As this Court has previously explained with regard to establishing the "knowing" requirement in the severe child abuse statute, Tennessee Code Annotated § 37-1-102(b)(22):

> the "knowing" element can and often must be gleaned from circumstantial evidence, including but not limited to, medical expert testimony on the

---

*Imerald W.*, No. W2019-00490-COA-R3-PT, 2020 WL 504991, at *7 (Tenn. Ct. App. Jan. 31, 2020); *In re Demarkus T.,* No. M2016-01839-COA-R3-PT, 2017 WL 3311313, at *4 (Tenn. Ct. App. Aug. 3, 2017); *In re Jakaeha A.L.*, No. E2012-02272-COA-R3-PT, 2013 WL 3148246, at *6-7 (Tenn. Ct. App. June 18, 2013). However, as this Court has previously stated, "a criminal conviction, standing alone, is not determinative. There must be some comparison of the criminal conviction with the definition of severe child abuse in Tennessee Code Annotated section 37-1-102." *In re C.S.*, 2020 WL 2066247, at *4. Thus, the trial court may have applied the definition of "knowingly" located in Tennessee Code Annotated § 39-15-401(b), the statute under which Mother was convicted, to collaterally estop her from relitigating severe child abuse in the instant action, provided the trial court also demonstrated "how the evidence support[ed] the ground of severe abuse." *See in re C.J.B.*, No. M2016-01585-COA-R3-PT, 2017 WL 2805193, at *5 (Tenn. Ct. App. June 28, 2017) (determining that a father's guilty plea to felony child neglect did "not, in and of itself, qualify as severe child abuse" because the trial court must also "demonstrate how the evidence support[ed] the ground of severe child abuse.").

likelihood that the injury occurred in the manner described by the parent or caregiver. Moreover, "knowing" conduct by a parent or caregiver is not limited to conduct *intended* to cause injury:

> The term "knowing" as used in Section 37-1-102(b)(2[2]) is not defined by statute . . . . In the context of the dependency and neglect statutes, the term has been described as follows:

> > We consider a person's conduct to be "knowing," and a person to act or fail to act "knowingly," when he or she has actual knowledge of the relevant facts and circumstances or when he or she is either in deliberate ignorance of or in reckless disregard of the information that has been presented to him or her.

> *In re Caleb J.B.W.,* No. E2009-01996-COA-R3-PT, 2010 WL 2787848, at *5, 2010 Tenn. App. LEXIS 447 (Tenn. Ct. App. July 14, 2010) (citing *In re R.C.P.,* 2004 Tenn. App. LEXIS 449, 2004 WL 1567122, at *7); *see also In re H.L.F.,* 297 S.W.3d 223, 236 (Tenn. Ct. App. 2009).

*In re S.J.*, 387 S.W.3d 576, 592 (Tenn. Ct. App. 2012). It is also well-established that "[t]he Trial Court is the arbiter of witness credibility of those who testify live before it." *See In re M.D.*, 2016 WL 5723954, at *5; *Wells*, 9 S.W.3d at 783. As our Supreme Court has previously instructed, "When credibility and weight to be given testimony are involved, considerable deference must be afforded to the trial court when the trial judge had the opportunity to observe the witnesses' demeanor and to hear in-court testimony." *Hughes v. Metro. Gov't of Nashville and Davidson Cty.*, 340 S.W.3d 352, 360 (Tenn. 2011) (quoting *Randolph v. Randolph*, 937 S.W.2d 815, 819 (Tenn. 1996)).

As to Mother's argument that her testimony demonstrates that she did not have knowledge of the severe child abuse, we first address the trial court's credibility determinations. The trial court made specific credibility determinations relative to several of the witnesses who testified in its presence, including Mother, whom the trial court found not to be credible. In its final order, the trial court made the following findings regarding Mother's testimony:

> The next witness to testify was [Mother]. The Court will note that during [Mother's] testimony, she admitted that she perjured herself on at least four (4) occasions in the various Juvenile Court proceedings. [Mother's] testimony was often self-serving. Her responses were often not

- 11 -

to the questions asked. [Mother] appeared to be very defensive. [Mother] also appeared to blame everyone else for her problems. On the one hand, [Mother] appears to admit that the twins were medically and nutritionally neglected and that it was her fault, yet later in her testimony assumes no responsibility for the health of any of these children. [Mother] would attempt to answer a question and later in her testimony attempt to spin her response to fit the question asked. This Court views the oath that a witness or a party takes as part of the very foundation of our judicial system. When a party or witness, after taking the oath, fails to tell the truth, the testimony given is an affront to our system of justice. The Court believes that [Mother] perjured herself repeatedly in this proceeding based on her many inconsistencies during her testimony. Further, the Court knows that [Mother] perjured herself in earlier Juvenile Court proceedings by her own admissions. [Mother] is not worthy of belief and the Court will give no weight to her testimony in this matter.

In a subsequent section of its final order, the trial court further stated:

[Mother] did appear in Juvenile Court with an individual by the name of [Z.S.M.]. The twins [were] not with [Mother]. In [Mother's] first act of deception, she falsely testifie[d] [in the juvenile court] that [Z.S.M.] is the father of the twins. In another act of deception, [Mother] falsely testifie[d] that she was a surrogate for the twins. She stated the twins were not hers. In yet another act of deception, [Mother] falsely testified that the twins were residing with [Z.S.M.]. [Mother] asked the Court to determine that [Z.S.M.] was the father while knowing she would be perpetrating a continuing fraud on the Court. Further, after being directed by the Court to disclose the whereabouts of the twins, only [Z.S.M.] testified where the twins could be located. [Mother] stood silent in what this Court finds as a continuation of this false and elaborate cover-up of known abuse.

* * *

The attempted cover up by [Mother] validates the Court's belief that she knew her abuse or neglect would be discovered if she testified truthfully.

Mother specifically argues that her testimony demonstrated that she did know that the Twins were at risk of serious bodily injury or death. However, Mother acknowledged that she falsely testified in the juvenile court preliminary hearing and admitted falsely testifying about her pregnancy with the Twins in a former custody proceeding concerning another child. Particularly in light of the deference we afford to the trial court's credibility determination, *see Hughes*, 340 S.W.3d at 360, we conclude that the evidence in the record supports the trial court's determination in this regard.

Mother also relies in part on Ms. Butler's testimony that she had to change the Twins' diapers when they were brought into DCS custody. Mother asserts that the fact that the Twins' diapers needed changing demonstrated that the Twins were receiving the necessary nutrition they needed. We disagree.

As the trial court determined, the testimony of Ms. Knox, a pediatric nurse practitioner at the Hospital and a qualified expert, refutes any argument that the Twins were receiving the nutrition they required while in Mother's care. Ms. Knox explained that upon the Twins' arrival at the Hospital, their official diagnosis was malnutrition and failure to thrive as a result of inadequate calories. She opined that the Twins were both victims of nutritional neglect and medical neglect and that both were dehydrated upon admission to the Hospital.

As the trial court indicated in its final order, "Ms. Knox's testimony reflected an extensive description of the physical condition of [the Twins] . . . . Ms. Knox described from photographs the condition of [the Twins] . . . . These photographs were made Exhibit 3 to her deposition." Significantly, Ms. Knox testified that the Twins' risk of death was "nine fold" and that there was a likelihood that the Twins would have died but for DCS's intervention. The trial court concluded that her testimony was "impressive," and "well prepared," and that "[h]er explanation of the nutritional and medical neglect that she diagnosed substantially assisted" the trial court. As a result, the court also gave "great weight" to her testimony. Affording considerable deference to the trial court's credibility determinations, *see id.*, we conclude that the evidence preponderated in favor of the trial court's findings, thereby establishing by clear and convincing evidence that the Twins were the victims of severe child abuse in that they were malnourished when they were removed from Mother's custody.

Upon determining that the Twins were dependent and neglected as to Mother, the trial court in its final order further determined that it was in the Twins' best interest to remain in DCS custody. In support of its determination, the trial court, during its three-day trial, considered extensive testimony and numerous exhibits, all of which were clearly detailed in the trial court's final order. The trial court also concluded that placement with Mother would subject the Twins to a high risk of serious harm or bodily injury.

In addition to Ms. Butler's testimony, the trial court considered testimony from Grandmother, who stated that when she first observed the Twins following their removal from Mother's custody, it was "very difficult" to look at them and that the Twins appeared lifeless. Grandmother related that by the time of trial, the Twins were healthy. According to Grandmother, the Twins no longer manifested any problems eating and were well nourished. Grandmother added that Mother had refused to have any of her children vaccinated, including the Twins, despite their apparent need for vaccinations.

- 13 -

The trial court also afforded "great weight" to Grandmother's testimony.

Our review of the evidence in the record on appeal substantiates a determination that the proof supports the trial court's findings. When the Twins were brought to the juvenile court via court order, they were clearly in poor medical condition. Mother conceded as much and agreed that the Twins needed medical attention. Despite her admitted belief that the Twins required medical care, Mother refused to disclose the Twins' location during the juvenile court preliminary hearing. After the Twins were located, Ms. Butler testified that the moment she saw the Twins, she was extremely concerned, as demonstrated by the fact that the Twins were immediately taken to the Hospital for medical treatment.

Prior to the Twins' removal from her custody, Mother purportedly transported the Twins to Eve's for medical treatment, a fact that, if true, indicates that she likely knew the Twins were in poor health. Mother acknowledged that she was criminally convicted by a jury of two counts of felony child neglect pursuant to Tennessee Code Annotated § 39-15-401(b). Moreover, Mother admitted that the Twins were abused and neglected by her failure to properly feed them and by her failure to provide them with medical care. The circumstantial evidence clearly established that Mother's neglect of the Twins was with her knowledge of the danger to their lives and health.

Upon our thorough review of the record, we conclude that the evidence preponderates in favor of the trial court's findings by clear and convincing evidence that the Twins were dependent and neglected due to severe child abuse perpetrated by Mother.

V. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court. We determine that the trial court's application of the incorrect statute for purposes of collateral estoppel was harmless error because the trial court otherwise made exhaustive findings of fact that clearly and convincingly demonstrated that the Twins were dependent and neglected as a result of severe child abuse perpetrated by Mother. This case is remanded to the trial court for enforcement of the judgment and collection of costs assessed below. Costs on appeal are assessed to the appellant, Tamika S.

_____
THOMAS R. FRIERSON, II, JUDGE