IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 1, 2020 Session

## JOHN RAYMOND KAUTZ v. DORIS DIANE KAUTZ BERBERICH

**Appeal from the Circuit Court for Polk County**
**No. CV-11-059     J. Michael Sharp, Judge**

_____

### No. E2019-00796-COA-R3-CV

_____

This appeal concerns a divorce. John Raymond Kautz ("Husband") sued Doris Diane Kautz Berberich ("Wife") for divorce in the Circuit Court for Polk County ("the Trial Court"). The parties entered into a marital dissolution agreement ("the MDA"), which the Trial Court approved in its final decree of divorce. Some years later, Wife filed a petition pursuant to Tenn. R. Civ. P. 60.02 seeking relief from the judgment on grounds that Husband failed to disclose certain assets. The Trial Court granted Wife's motion. However, after a subsequent hearing, the Trial Court found that while Husband later hinted to Wife he had more assets than he disclosed, he actually had not concealed any valuable assets not already known to Wife. The Trial Court reinstated the MDA with certain amendments. Wife appeals. We decline to re-evaluate the Trial Court's implicit credibility determinations, and the evidence does not preponderate against the Trial Court's finding that Wife was aware of the valuable marital assets at the time the MDA was executed. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which ANDY D. BENNETT and THOMAS R. FRIERSON, II, JJ., joined.

Philip M. Jacobs, Cleveland, Tennessee, for the appellant, Doris Diane Kautz Berberich.

Laura M. Crawford, Ducktown, Tennessee, for the appellee, John Raymond Kautz.

# OPINION

## Background

In June 1996, Husband and Wife got married in Indiana. No children were born of the marriage. Husband was a money manager who worked for Morgan Stanley and Wife was a schoolteacher. In 2007, Wife filed a complaint for divorce, which later was dismissed when the parties reconciled. A postnuptial agreement was executed as a result. In April 2011, Husband filed a complaint for divorce of his own in the Trial Court. In January 2012, following mediation, the parties agreed on a division of marital property; the MDA was executed toward that end. Both parties were represented by counsel in this process. In March 2012, the Trial Court entered a final decree of divorce based upon the ground of irreconcilable differences and incorporating the MDA. The MDA included the following provision regarding the parties' retirement accounts:

> 11. <u>WAIVERS OF ALL CLAIMS AGAINST ASSETS OF THE PARTIES:</u> Except as herein otherwise provided, each party may dispose of his or her property in any way, and each party hereby waives and relinquishes any and all rights which he or she may now have or may hereafter acquire under the present or future pensions, Individual Retirement Accounts, bank accounts, stocks, bonds, and any and all other property or assets which the other presently owned or may hereinafter acquire, and each party hereby waives and relinquishes all rights he or she may now have or hereafter acquire under the present or future laws of any jurisdiction, to share in the marital relationship, including without limitation dower, homestead, courtesy, statutory allowances, widow's allowances, right to pay an intestacy, right to take against the will of the other, the right to act as administrator or executor of the other's estate, and each party will at the request of the other, execute, acknowledge, and deliver any and all instruments which may be necessary or advisable to carry into effect this mutual waiver and relinquishment of all such interest, rights and claims.

In May 2012, Wife filed a petition for criminal and civil contempt against Husband with respect to the sale of the marital residence. In September 2013, the Trial Court entered an agreed order whereby Husband was to pay Wife $160,000 for her interest in the marital residence. Ostensibly, the divorce was over.

In March 2016 the matter revived, as Wife filed a petition pursuant to Tenn. R. Civ. P. 60.02 alleging Husband failed to disclose certain lottery winnings and requesting that the MDA be set aside. The basis for Wife's claim about lottery winnings was a highly

antagonistic email sent to her by Husband back on March 19, 2012 wherein he stated, in part:

> A friend at Dean Witter years ago had a poster that proclaimed "Living well is the best revenge!" How true.
>
> So you enjoy your one-bedroom apartment, your sub-zero wind chills and your stolen money while your precious belongings gather dust in storage.
>
> Meanwhile, I'll be enjoying my lakefront dream home, my bachelorhood and my lottery winnings while your face fades in my rear-view mirror!
>
> Have a great life.

In October 2016, Wife filed a motion to amend her Rule 60.02 petition to allege that Husband also failed to disclose other marital assets, including a retirement account. The matter was heard in June 2017. Wife, then age 70, and Husband, then age 75, testified. Wife testified to the marital assets she contended Husband failed to disclose:

> A. In this process I found that there was a BB&T account while we were married that I did not know about. There are retirement account or accounts that I did not know about. I did not know the value of his -- the one that I did know about I didn't know the value of. He admitted that he took money from a life insurance policy that at that time I was the beneficiary of. He took $6,000 out of that, the cash in that policy. I found that he lied on his 2011 taxes. We were married but separated. I filed married but separated; he filed single. He lied in deposition about how he settled with me on that $160,000. I believed that he had refinanced the house. He mentioned in deposition that the money came from the sale of his now wife's house, which actually didn't sell until 14 months after he settled with me. So again, that's another lie. The information that he supplied was not complete. There was no information about how utilities, mortgage, improvements to the house, cars, boats, and things like that were paid for.

***

> Q. (By Mr. Jacobs) How much was deposited in the UBS account on or about April 11th of 2013?
> A. $311,415.25.
> Q. Were you aware there was a UBS account, an IRA?
> A. Yes, sir.

-3-

Q. Did you know the value of that account?
A. No, sir.
Q. Did you know about a Northern Trust account?
A. Never.
Q. Did you know about a Morgan Stanley account?
A. No, sir.

***

Q. While I'm up here, did you know anything about any rental real estate or partnerships that he had?
A. I believe that was, and I think the name of it is Everest Ridgewood or Ridgewood Everest, I'm not sure, I knew about it.
Q. Is there any mention of that company or interest in that company in your marital dissolution agreement?
A. No, sir.

***

Q. He has stated that his only lottery winnings was on December 28th of 2011 of three dollars. Do you believe that to be accurate?
A. I can't tell if he won three dollars on December 28, 2011. That's what he stated in deposition. I can't prove that or not prove it.
Q. Do you believe that's the extent of his lottery winnings?
A. No, sir.

Husband, for his part, testified that he only won three dollars in the lottery. Husband stated that "[i]n that e-mail, as I said previously, I was referring simply to the ironic fact that I had won a big three dollars on the 28th of December." When pressed on Wife's allegations that he concealed the existence or value of certain marital assets, Husband testified:

Q. Do you have any proof to offer to the Court today you disclosed to Ms. Berberich or any of her agents what was in your 401(k), IRAs, or pensions at the time of your divorce?
A. Well, she certainly knew what was in the 401(k) and we got a statement every year on the pension plan that showed the additional $300,000. She was well aware of it for years.
Q. Do you have any proof of that?
A. I don't know how I would prove it.

-4-

Q. Do you have any correspondence from Mr. Painter to Mr. Brown that says, These are the assets of the parties and this is how they should be equitably divided?
A. The only thing I recall there is as we said, that we read earlier, that we agreed her pension was hers and my pension was mine, period.

In September 2017, the Trial Court entered an order finding that Wife was entitled to relief under Rule 60.02. The Trial Court found that Husband "fraudulently and intentionally failed to disclose all of his financial assets prior to the execution of the MDA and all subsequent settlement agreements." The Trial Court, setting aside the MDA as it related to the division of marital assets, stated that "[t]he parties shall submit to the court for further proceedings to allow the court to make an equitable division of all of the undisclosed assets that existed at the time of the final divorce decree and MDA." The Trial Court also awarded Wife her attorney's fees.

A hearing was conducted in April 2018. The record contains no transcript from that hearing. However, the record does contain a Statement of Evidence. According to the Statement, Wife's proof included the following:

1. The real property had a value of $320,000.00.
2. Based on the financial statements of the accounts from the date of the parties divorce, the financial/retirement accounts between the parties had the following values:
   a. Husband's IRA at UBS was $334,343.26.
   b. Husband's IRA at Northern Trust was valued at $365,654.00.
   c. Wife's IRA had a [marital] value of $23,180.00, the remaining value of the asset is Wife's separate property. The total value of the Wife's IRA as the date of the divorce was approximately $122,000.00. This asset was accumulated during the 30 years the Wife was employed in the State of Indiana. The Wife was married to Husband for 5 of those years or 19.35%.
3. Wife testified that she did not know the value of Husband's BB&T account, Community Bank account, Southern Bank account or United Community Bank account.

***

10. The Wife testified that she had a liability on her tax refund resulting from failure of the parties to file a joint tax return and the Husband filing an individual tax return and claiming to be divorced in the amount of $1,925.00.

11. The total disclosed assets following the June 30, 2017, hearing had a value of $1,101,488.26 excluding Wife's pension.

***

15. The marital estate that was awarded to Wife pursuant to the marital dissolution agreement was as follows:
   a. One-half interest in the real property at a value of $160,000.00 to Wife.
   b. A vehicle valued at $2,000.00.
   c. Financial accounts valued at $23,180.00 excluding the value of her pension.
   d. Personal property valued at $4,930.00.
   e. Liabilities of the following: Piano ($3,552.75), jukebox ($2,897.47) and tax refund ($1,925.00) for total liabilities of (8,375.22).
16. Wife's net marital estate had a value of $181,734.78 excluding the value of her pension, and the Wife had separate property of $104,181.00.
17. The marital estate awarded to Husband pursuant to the [Marital] Dissolution Agreement and based on the discovered assets was as follows:
   a. One half interest in the Real property value of $160,000.00 to Husband.
   b. Personal property valued at $14,510.00.
   c. Vehicle $2,000.00.
   d. Financial accounts $334,343.26 in his IRA at UBS and $365,654.00 in an IRA at Northern Trust.
   e. The Husband had no liabilities.
   f. A tax refund for 2011 of $3,871.00.
   g. Husband has cash value in a life insurance policy in the amount of $31,000.00.
18. The net marital estate that Husband received was $907,507.26.
19. The Husband did have separate property in his two different pensions or financial accounts. The Husband received 82.4% percentage of the actual [marital] Estate.
20. The business interest/real estate partnership owned by Husband was acquired before the parties marriage and is separate property or his separate liability.
21. The Wife through her exhibit and testimony went on to pray for a division of the assets that was an award of the [marital] estate, 60 percent awarded to her and 40 percent of [marital] estate to Husband and requested $470,782.96 from Husband's two financial accounts with UBS, one of which

was formerly with Northern Trust, to create an equitable division of the [marital] estate.

Husband also testified at the April 2018 hearing. According to the Statement, Husband denied that Wife had been unaware of any marital assets:

22. Mrs. Berberich was fully aware of the marital assets at the time of the negotiation of the Marital Dissolution Agreement.
23. That assets that Mrs. Berberich claims were not disclosed, such as an account with BB&T and Northern [T]rust Company, did not exist [at] the time of the divorce.
24. The BB&T was created at the time of the parties' separation in 2007 and was closed upon the parties' reconciliation that same year and monies left in that account at that time were deposited back into the parties joint UBS account.
25. The BB&T account did not exist at the time of the parties' divorce action in 2012.
26. I did not have any kind of financial account with Northern Trust Company, but rather Northern Trust Company was the administrator of his Morgan Stanley Pension Plan.
27. I did not receive any substantial lottery winnings prior to divorce.
28. Mrs. Berberich was aware of my retirement benefits from Morgan Stanley which I thought she waived any marital interest pursuant to the Marital Dissolution Agreement and previously in the Postnuptial Agreement executed on July 9, 2007, both times having been represented by counsel.
29. Full disclosure of the assets were made during the negotiation of both of those agreements.
30. I believed each party would retain all rights to their own retirement.

In June 2018, the Trial Court entered its Order Regarding Post Divorce Issues. In sum, the Trial Court found that, while Husband had insinuated to Wife he concealed certain marital assets of value from her, in reality, he had not. In its order, the Trial Court stated:

Based upon all of the proof, now before the court, regarding the extent of the parties' assets on the date that the parties entered into the initial marital dissolution agreement (MDA), entered on March 19, 2012, and their subsequent settlement agreement entered on 9/6/2013, the court finds that there was no substantial or substantive asset that Mr. Kautz owned or had possession or control of that Ms. Kautz Berberich was not actually aware of at the time. However, due to statements made by Mr. Kautz and/or the

actions of Mr. Kautz, which apparently was due to his anger and/or his animosity toward Ms. Kautz Berberich, Mr. Kautz created the distinct impression that he had substantial other assets. Specifically, Mr. Kautz made reference to his lottery winnings. Furthermore, Ms. Kautz Berberich became aware of a real estate partnership that Mr. Kautz is a partner in with what now appears to be multiple other individuals. The reality is, based upon all of the proof now before the court, that the real estate partnership has a negative equity value of about $96,000.00 that Mr. Kautz is responsible for. Had this information been made known to Ms. Kautz Berberich at the time of the marital dissolution agreement, then some if not all of this extended litigation could have, and should have been, avoided. The same is true with regard to any actual lottery winnings, there is no credible proof before the court that the lottery winnings were substantial, nor much of anything, however, due to statements made by Mr. Kautz to Ms. Kautz Berberich, the appearance was given to Ms. Kautz Berberich that there was possibly a failure to disclose what was a substantial asset.

With regard to the BB&T and the Northern Trust Company accounts, the proof is that Mr. Kautz failed to disclose that the BB&T account that was created at the time of the parties' separation in 2007 was in fact closed upon the parties' reconciliation later that same year, and that monies left in that account at that time were then deposited back into the parties' joint UBS account. Had that full disclosure been made, again, some or all of this litigation could and should have been avoided.

Ultimately, the court finds that Mr. Kautz did not make full disclosure of all of the assets and/or the asset trail that would have avoided this litigation. In fact, the court finds that for reasons known only to Mr. Kautz, he appeared to lead and possibly even goad Ms. Kautz Berberich into believing that there were other greater assets that he owned and/or had possession of, and that she was losing out on certain assets. It now appears, based upon the further proof, that there were no real substantial or other additional assets. In fact, it appears that the real estate partnership is a liability instead of an asset. It further appears that whatever lottery winnings there were were minimal, and in fact Ms. Kautz Berberich was not able to offer any credible proof that there were any lottery winnings of any substance. The court finds that it is very unfortunate that these parties are back before the court based upon such an apparent animosity between each other that they continue to litigate what should have been fully and completely settled by [their] settlement agreement executed 9/26/2013.

Based upon all of the above, the court amends it's Final Order reinstating the marital dissolution agreement because there were no real assets of any substance that actually existed. However, given the statements

and actions of Mr. Kautz, Ms. Kautz Berberich had every reason to believe that there might be substantial assets, given the representations made by Mr. Kautz.

The MDA is also amended to provide that Mr. Kautz's actions in filing the tax return as a single person were in fact fraudulent in that he was not a single person. The court finds that the tax returns should have been filed jointly, and therefore that return should be amended and filed jointly based upon the parties' marital status and apparent agreement at that time.

Finally, with regard to attorney fees, the court finds that this litigation would not have been made necessary but for the failure to properly and truthfully disclose all of his assets and/or holdings to Ms. Kautz Berberich at the time of the parties' settlement agreement. Because of that, Ms. Kautz Berberich was under the mistaken belief that there were likely other substantial assets and/or accounts that existed at the time of the parties' MDA that were not properly disclosed to her nor to the court. The court believed the same thing based upon the proof before the court in September of 2017. Now, the court finds that in actuality this reasoning was based upon false or misleading statements made by Mr. Kautz to Ms. Kautz Berberich in an apparent attempt to antagonize her or for other reasons. Nevertheless, the court finds that due to Mr. Kautz's false statements and/or misrepresentations, Ms. Kautz Berberich is entitled to her attorney fees and costs in this matter. Otherwise, except as set out herein, the MDA is reinstated except as amended herein.

In July 2018, Wife filed a motion to alter or amend. In February 2019, the Trial Court entered an order denying Wife's motion. In its order, the Trial Court stated:

In this court's order of June 25, 2018, the court noted that with regard to the BB&T and the Northern Trust Company accounts, the account created at the time of the separation was in fact closed upon the parties' reconciliation later that same year. The court found that all of the monies left in that account at that time were then deposited back into the parties' joint UBS account. Based upon this, the court finds that Ms. Berberich had full disclosure of all of Mr. Kautz's financial assets, even though the court understands, based upon Mr. Kautz's statements regarding his other various accounts and assets, why Ms. Berberich believed that she did not have full disclosure. After having considered all of the evidence that Ms. Berberich offered to the court in this court's re-hearing, after having given her the opportunity to present any and all evidence that she had pertaining to all of the parties' marital assets, including but not limited to, the IRA with Morgan Stanley, as well as any JP Morgan Chase accounts, UBS accounts and BB&T accounts, the court finds

that there has been no evidence presented to the court that Ms. Berberich did not have knowledge of all of the assets as well as knowledge of the extent of all of Mr. Kautz's accounts and assets.

After a further, thorough review of all the evidence before the court in this matter, the court respectfully denies the motion to alter or amend, with the exception that the court finds, subject to the mandates of it's order, that the end result of the MDA that the court reinstated was, and is, a fair and equitable division of the parties' marital assets. The court finds that there are no further undisclosed financial accounts of Mr. Kautz that Ms. Berberich has offered this court any proof or evidence of. The court finds that the division of assets contained in the reinstated marital dissolution agreement (MDA) is an equitable division pursuant to T.C.A. §36-4-121. Otherwise, this court respectfully denies the petitioner's motion to alter or amend, and in all respects reaffirms it's previous order. This is a final order.

Due to an issue with service, the February 2019 order was re-entered as a final order in May 2019. Wife timely appealed from that order. The Trial Court also entered an award of attorney's fees and discretionary costs to Wife in the amount of $15,518.25.

## Discussion

We restate and consolidate Wife's three issues on appeal into the following two dispositive issues: 1) whether the Trial Court erred in reinstating the MDA, as amended, despite having found earlier that Husband fraudulently and intentionally failed to disclose all of his financial assets; and, 2) whether the Trial Court erred in reinstating the MDA when it resulted in an inherently inequitable division of the marital estate. In their briefs' conclusions, both parties attempt to raise the issue of whether they should be granted an award of attorney's fees.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001). Regarding witness credibility, our Supreme Court has stated:

When it comes to live, in-court witnesses, appellate courts should afford trial courts considerable deference when reviewing issues that hinge on the witnesses' credibility because trial courts are "uniquely positioned to observe the demeanor and conduct of witnesses." *State v. Binette*, 33 S.W.3d

-10-

215, 217 (Tenn. 2000). "[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999); *see also Hughes v. Metro. Gov't of Nashville & Davidson Cnty.*, 340 S.W.3d 352, 360 (Tenn. 2011). In order for evidence to be clear and convincing, it must eliminate any "serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *State v. Sexton*, 368 S.W.3d 371, 404 (Tenn. 2012) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 221 (Tenn. 2009)). Whether the evidence is clear and convincing is a question of law that appellate courts review de novo without a presumption of correctness. *Reid ex rel. Martiniano v. State*, 396 S.W.3d 478, 515 (Tenn. 2013), (citing *In re Bernard T.*, 319 S.W.3d 586, 596-97 (Tenn. 2010)), *cert. denied*, ––– U.S. –––, 134 S.Ct. 224, 187 L.Ed.2d 167 (2013).

*Kelly v. Kelly*, 445 S.W.3d 685, 692-93 (Tenn. 2014).

We first address whether the Trial Court erred in reinstating the MDA, as amended, despite having found earlier that Husband fraudulently and intentionally failed to disclose all of his financial assets. In particular, Wife states that the Trial Court failed to account for $600,000 in marital retirement accounts for which there was no specific provision in the MDA, the result being a highly inequitable division of marital assets. According to the Statement of Evidence, Husband testified among other things at the April 2018 hearing that Wife was fully aware of the marital assets at the time the MDA was negotiated. This implicates whether Husband's testimony was credible, and we extend strong deference to a trial court's determination of witness credibility. Wife argues, however, that since the Trial Court did not make any specific credibility determination, its conclusion is not entitled to any deference on that basis. It certainly is preferable for trial courts to make explicit credibility determinations, lest there be any ambiguity. Nevertheless, from time to time, this Court has acknowledged implicit credibility determinations. *See, e.g., In re H.S.*, No. M2019-00808-COA-R3-PT, 2020 WL 1428777, at *9 (Tenn. Ct. App. Mar. 20, 2020), *no appl. perm. appeal filed*; *In re Wyatt S.*, No. E2012-00539-COA-R3-JV, 2012 WL 5482215, at *9 (Tenn. Ct. App. Nov. 13, 2012), *no appl. perm. appeal filed*; *Taylor v. McKinnie*, No. W2007-01468-COA-R3-JV, 2008 WL 2971767, at *4 (Tenn. Ct. App. Aug. 5, 2008), *no appl. perm. appeal filed*. To illustrate, if party (A) testified to (X), and party (B) testified to contrasting account (Y), and the trial court's order reflects that it believed (Y) to be the case, then one can discern that the trial court credited party (B)'s testimony rather than party (A)'s even if the court failed to make an explicit credibility determination. Here, the Trial Court implicitly credited Husband's testimony at the April 2018 hearing notwithstanding its finding that Husband goaded Wife into believing he concealed certain valuable assets. In any event, in view of the outcome, the Trial Court plainly did not credit Wife's testimony. We will not overturn a trial court's credibility determination—be it

-11-

implicit or explicit—absent clear and convincing evidence to the contrary. We find no such clear and convincing evidence in this record.

Beyond the matter of the marital retirement accounts, the Trial Court found further that Husband's lottery winnings were of a trivial amount and his real estate partnership actually had a negative value. The Trial Court also found "that there has been no evidence presented to the court that Ms. Berberich did not have knowledge of all of the assets as well as knowledge of the extent of all of Mr. Kautz's accounts and assets." The evidence does not preponderate against the Trial Court's factual findings, and we discern no reversible error on this issue.

We next address whether the Trial Court erred in reinstating the MDA when it resulted in an inherently inequitable division of the marital estate. Wife cites to Tenn. Code Ann. § 36-4-103(b), which pertains to divorces granted on the ground of irreconcilable differences such as the divorce of this case:

> (b) No divorce shall be granted on the ground of irreconcilable differences unless the court affirmatively finds in its decree that the parties have made adequate and sufficient provision by written agreement for the custody and maintenance of any children of that marriage and for the equitable settlement of any property rights between the parties. If the court does not affirmatively find that the agreement is sufficient or equitable, the cause shall be continued by the court to allow further disposition by the petitioner. If both parties are present at the hearing, they may, at that time, ratify any amendments the court may have to the agreement. The amended agreement shall then become a part of the decree. The agreement shall be incorporated in the decree or incorporated by reference, and such decree may be modified as other decrees for divorce.

Tenn. Code Ann. § 36-4-103(b) (2017). According to Wife, the Trial Court had an obligation to ensure that the division of marital assets in the MDA was equitable. Wife asserts, and Husband does not dispute on appeal, that the MDA resulted in a roughly 82/18 division of marital assets in favor of Husband. In its order denying Wife's motion to alter or amend, the Trial Court explicitly found that the MDA, as amended, represented a fair and equitable division of property. However, more to the point, this current round of post-divorce litigation with these parties stemmed from Wife's Rule 60.02 petition alleging failure to disclose on Husband's part. The success of Wife's Rule 60.02 petition to set aside the MDA years after entry of the final decree of divorce hinged not upon whether it was an equitable division but could she prove, ultimately, that she lacked the benefit of full disclosure when the MDA was executed. Having failed to prove that, Wife is left to argue that the MDA was extremely unfair to her. Wife is seeking, long after the divorce was

final, an agreement more favorable to her (at the April 2018 hearing, Wife requested a 60/40 division of assets in her favor) than the one she freely and knowledgably entered into with the aid of counsel in 2012 (which apparently resulted in an 82/18 division in favor of Husband)—a "do-over," if one will. That is not a proper basis for Rule 60.02 relief. *See Higdon v. Higdon*, No. M2019-02281-COA-R3-CV, 2020 WL 6336151, at *7 (Tenn. Ct. App. Oct. 29, 2020), *no appl. perm. appeal filed* ("The parties agreed to a settlement, and it was duly entered. We decline Wife's request to re-open via a Rule 60.02 motion the division of the marital estate on the basis of alleged inequitableness."). We discern no reversible error in the Trial Court's declining to order a new division of the marital estate.

The final matter we address is that of attorney's fees. The Trial Court awarded Wife her attorney's fees below on grounds that Husband's misleading statements to Wife sparked this litigation. On appeal, both parties request an award of attorney's fees. Neither party identifies this request as a distinct issue; they simply ask for attorney's fees in their brief's conclusion almost as if in passing. "Courts have consistently held that issues must be included in the Statement of Issues Presented for Review required by Tennessee Rules of Appellate Procedure 27(a)(4). An issue not included is not properly before the Court of Appeals." *Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001). This would-be issue is waived. We decline to grant an award of attorney's fees to either party. The judgment of the Trial Court is affirmed in all respects.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellant, Doris Diane Kautz Berberich, and her surety, if any.


    s/ D. Michael Swiney
D. MICHAEL SWINEY, CHIEF JUDGE